In the Matter of the Probate of the Will of Neva Elmore, Deceased. Ivan Mereness, Appellant; Ronald Elmore, Sr., et al., Respondents.

Third Department, July 12, 1973.

*Van Horne, Feury & Gozigian* (*Edward Gozigian* of counsel), for appellant.

*Bruce C. McGregor, Jr.*, for respondents.

Greenblott, J. This is an appeal from a decree of the Surrogate's Court of Otsego County, entered December 1, 1972, which denied probate to a writing propounded by appellant as the last will and testament of the deceased, upon a jury verdict that said writing was procured by undue influence, and which dismissed the petition for probate.

Respondents, contestants below, are the adopted son and daughter of the deceased, having been adopted at very young ages. In February, 1972, when deceased was 73 years of age, she was hospitalized with what proved to be terminal cancer. She remained hospitalized after surgery until she died on March 22, 1972. Six days prior thereto, on March 16, 1972, she executed the will which was offered for probate by appellant. By the terms of that instrument, she disinherited her children, bequeathed $1,000 to each of four grandchildren, making no mention of a fifth grandchild, and left the residue of her estate, estimated at between $40,000 and $50,000, to be divided equally between appellant, who was a brother of deceased, and another

brother and a sister. Appellant was also named as executor. The evidence disclosed that, prior to this illness, the deceased had made a will by which she left the bulk of her estate to respondents.

Undue influence may be proven by circumstantial evidence, provided that such evidence is of a substantial nature (*Matter of Walther*, 6 N Y 2d 49, 54; *Rollwagen* v. *Rollwagen*, 63 N. Y. 504, 519). As the Court of Appeals has stated, "undue influence * * * can be shown by all the facts and circumstances surrounding the testator, the nature of the will, his family relations, the condition of his health and mind" and a variety of other factors, including the opportunity to exercise such influence (*Matter of Anna*, 248 N. Y. 421, 424). In the case at bar, there was considerable testimony from which the jury could have found facts giving rise to a strong circumstantial inference that undue influence had been exerted. The deceased's medical records showed that, at the time she executed the will, she had been hospitalized for six weeks, had undergone a serious operation which had not cured a terminal illness, and was described as being in a deteriorating and weakened condition. She was repeatedly given pain killing drugs which had the capability of clouding the mind of a person in such a weakened condition. Before the signing, appellant visited the deceased alone for an hour, and appears to have directed or supervised the execution in the presence of another beneficiary. The attesting witnesses were appellant's wife, and a friend of the deceased's sister. The lawyer who prepared the will was not present, but it is significant that the lawyer had originally been brought into contact with the deceased by appellant although the deceased's prior will had been prepared by a different attorney. Where a will has been prepared by an attorney associated with a beneficiary, an explanation is called for (see *Matter of Lamerdin*, 250 App. Div. 133, 135), and it is a question of fact for the jury as to whether the proffered explanation is adequate. The execution itself, moreover, was one of numerous occasions on which appellant and his cobeneficiaries had access to the deceased during her illness. Deceased's daughter, by contrast, was not even informed of her mother's condition until after the will had been executed.

The will itself is sufficiently suspect to have required careful scrutiny. Firstly, the deceased therein has disinherited the natural objects of her bounty. While this fact does not give rise to any presumptions against the validity of the will, it is,

in light of all the other circumstances, a factor to be considered and weighed. More significant is the fact that the testamentary intent expressed in the contested will represents a radical change diametrically opposed to the intent expressed in her prior will. It is well settled that such a change in the testamentary intentions of an aged and sick person under circumstances conducive to undue influence is a factor which will open such a testamentary document to the closest scrutiny (*Children's Aid Soc. of City of N. Y.* v. *Loveridge*, 70 N. Y. 387, 402; *Matter of Brush,* 1 A D 2d 625, 628).

Appellant urges that the will itself contained the explanation for the deceased's change of mind, so that a verdict in their favor was required. Indeed, the will states that nothing was being left to the children, '' as they have failed to be kind to me or kept in contact with me over the last ten years, and especially during my illnesses.'' However, there was considerable testimony from which the jury could have determined that the deceased harbored no such feelings towards her children. It was undisputed that during the same winter in which she was hospitalized, she had visited her daughter in Florida (a visit which she had made on other occasions), had had an enjoyable time, and was making plans to move to Florida in the following spring to live with or near the daughter. The daughter's reasons for failing to visit her mother at the hospital have already been explained. As to the son, there was testimony that he had assisted his mother in maintenance and household repairs on many occasions. Although it might be said that he could have been more diligent in visiting at the hospital, his heavy work schedule as a long-distance truck driver could have been viewed by the jury as a mitigating factor. The lawyer who had prepared the will testified that the deceased had told him she was leaving nothing to her son '' because he had received quite a bit already ''. This explanation does not withstand scrutiny. The only evidence of money received by the son showed that he had borrowed $500, of which he had repaid $300, and that on infrequent occasions he had received $2 or $3. These amounts would not be '' quite a bit '' when contrasted with one half of an estate in excess of $40,000. Finally, there was testimony that, after her return from Florida, the deceased had expressed to a friend a reaffirmation of the testamentary plan contained in the prior will.

It is our view that the quantitative and qualitative nature of all the circumstances created a question for the jury and that

its verdict, after resolution of questions of credibility, was supported by a preponderance of the evidence.

The decree should be affirmed, with costs.

STALEY, JR., J. P., COOKE, KANE and REYNOLDS, JJ., concur.

Decree affirmed, with costs.