■ In the Matter of the Estate of MARIE ANTOINETTE, Deceased. EDITH CAMP, Appellant; LAURIE M. GREENWOOD et al., Respondents. [657 NYS2d 97] —Yesawich Jr., J. Appeal from a decree of the Surrogate's Court of Rensselaer County (Lang, S.), entered November 9, 1995, which denied probate of an

---

instrument purporting to be the last will and testament of Marie Antoinette.

On January 16, 1991, Marie Antoinette (hereinafter decedent) died, leaving a will dated July 24, 1990 (hereinafter the July will) in which she left the bulk of her estate to petitioner, her niece by marriage. Respondents, decedent's grandnieces and the beneficiaries of her prior will, dated April 30, 1990, objected to the probate of the July will, alleging that it had been procured by petitioner's fraud and undue influence. Petitioner's motion for summary judgment was denied and a trial ensued, at the close of which the jury found that the July will was the product of petitioner's undue influence upon decedent. The instrument was denied admission to probate, and petitioner appeals.

Petitioner's initial contention, that summary judgment should have been granted, is meritless for the affidavits submitted in opposition thereto contain factual averments which, when taken together, circumstantially support an inference that decedent's execution of the July will was the result of petitioner's exertion of a subtle, but pervasive, form of coercion and influence, by which she overwhelmed and manipulated decedent's volition to advance her own interests (*see, Matter of Walther*, 6 NY2d 49, 53-54; *Matter of Burke*, 82 AD2d 260, 270; *Matter of Kaufmann*, 20 AD2d 464, 482-483, *affd* 15 NY2d 825). No single circumstance is dispositive in this regard; rather, it is the confluence of many factors—including the nature of decedent's relations with petitioner, respondents and her attorney of long standing (*see, Matter of Burke, supra*, at 272-273), and her lack of involvement in fiscal matters, prior to the events at issue; the abrupt and otherwise unexplained changes in decedent's behavior, beliefs and attitudes, culminating in a radical alteration of her testamentary disposition, shortly after petitioner began taking an active role in decedent's day-to-day affairs (*see, Matter of Elmore*, 42 AD2d 240, 242); petitioner's sudden intense interest in decedent's financial circumstances, and the fact that she was overheard actually pressing her 90-year-old aunt to take certain actions with respect thereto; and decedent's apparent uncertainty and lack of understanding of some of the transactions she purportedly sought to effect with petitioner's assistance—that suggests that the July will does not truly reflect the independent testamentary intentions of decedent. Considered collectively, these elements demonstrate not only that petitioner had the motive and the opportunity to influence decedent, but that she actually wielded that influence (*see, Matter of Walther, supra*, at 55) by, *inter alia*,

convincing decedent that those she had formerly trusted were stealing from her and were improperly managing her property (*see, Matter of Kaufmann, supra,* at 482-485).

The proof elicited at trial was essentially similar to that presented on the motion, and the jury's resolution of the pertinent factual questions in respondents' favor was not unwarranted, particularly given the testimony of bank employees who witnessed petitioner's interactions with decedent, and the evidence substantiating the nature of petitioner's and decedent's contacts with the latter's former family lawyer, and his staff and colleagues. In short, the verdict cannot be said to be improper or against the weight of the credible evidence (*see, Matter of Elmore, supra,* at 242-243).

Nor did Surrogate's Court err in instructing the jury with respect to the possibility that petitioner and decedent had a confidential relationship, such that decedent's bequest to petitioner could justify an inference that the same was procured by undue influence (*see, Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,* 45 NY2d 692, 698-699). The relevant circumstances, including decedent's established lack of interest in, or ability to manage, her own finances, and concomitant dependence upon others to do so, could justify a finding that the trust she reposed in petitioner was such that they dealt on an unequal footing, and hence petitioner had a fiduciary duty to act in decedent's best interest (*see, id.; Matter of Bumbaca,* 182 AD2d 756, 757). Although close family ties may negate the presumption of undue influence that would otherwise arise from a confidential or fiduciary relationship (*see, Matter of Swain,* 125 AD2d 574, 575, *lv denied* 69 NY2d 611), the jury, not unreasonably, could have decided that the relationship between petitioner and decedent was such that it could fairly be said that petitioner acted not out of family duty, but rather cupidity.

Petitioner's remaining argument—that Surrogate's Court erred in admitting evidence of decedent's close family association with respondents and their parents over the years—has been considered and rejected.

Cardona, P. J., Mikoll, Crew III and White, JJ., concur. Ordered that the decree is affirmed, with costs.