■ In the Matter of the Estate of MARIA MAZAK, Deceased. BARBARA CAVANAUGH, as Coexecutor of MARIA MAZAK, Deceased, Respondent; STEPHANIE NAUHOLNYK, Appellant. [732 NYS2d 707] —Carpinello, J. Appeal from an order of the Surrogate's Court of Montgomery County (Tomlinson, S.), entered July 17, 2000, which, *inter alia*, set aside the conveyance of certain real property from decedent to respondent.

---

By deed dated March 27, 1998, Maria Mazak (hereinafter decedent), then almost 80 years old and suffering from terminal cancer, conveyed title to her residence to respondent, a life-long friend who had taken decedent into her own home a month earlier and had been caring for her. Decedent died about 3½ weeks after the conveyance, on April 21, 1998, leaving no immediate family. After her death, the instant proceeding was filed by petitioner, the coexecutor of decedent's estate, to set aside the conveyance.

Following several days of testimony at the ensuing trial, Surrogate's Court issued a lengthy written decision in which it found that respondent had a confidential/fiduciary relationship with decedent, thus making it her burden to establish by clear and convincing evidence that the challenged conveyance was free of undue influence, a burden which Surrogate's Court found she failed to meet. Accordingly, the court invalidated the conveyance and found decedent's residence to be an asset of the estate. On this appeal, respondent does not challenge the court's finding of a confidential/fiduciary relationship, rather, she contends that there was sufficient evidence to rebut the presumption of undue influence. Finding no error in the weighing of the evidence by Surrogate's Court, we affirm.

Two attorneys testified in the proceeding before Surrogate's Court. The first attorney saw decedent in February 1998 when she came to his office accompanied by respondent.* On this occasion, respondent explained the details of a "plan" whereby decedent would convey title to her residence to respondent's *daughter*, who would then sell the house after decedent's death and distribute the proceeds to decedent's relatives in the Ukraine, a plan intended to avoid the imposition of Ukrainian estate taxes. After the attorney advised against such a plan, decedent never returned to his office. Instead, in March 1998, following a suggestion by respondent to see a different attorney known to respondent, decedent met with this second attorney. On the three occasions that decedent went to this attorney's office, she was accompanied either by respondent or respondent's husband, or both. Decedent's conversations, which were in Ukrainian "with a drop of English," were all translated by respondent's husband. This attorney testified that, although decedent initially wanted to transfer her house to respondent's daughter, she ultimately decided to transfer it to respondent directly as respondent and her husband had been "very good to

---

* This attorney had previously drafted decedent's 1996 will in which she bequeathed all of her household furnishings to respondent while giving the remainder of her estate to relatives in designated percentages.

her." This attorney testified that there was never any discussion of Ukrainian estate taxes in any of these meetings.

It was also well established at the hearing that during the last several months of decedent's life when she was visiting with these attorneys, she was dependent on respondent for all the essentials of daily living, including food, transportation to medical care, payment of bills and general companionship. Other witnesses familiar with decedent and called by petitioner to testify indicated that it had always been decedent's intent to bequeath the proceeds of her house to her family members in the Ukraine. Indeed, one such witness testified through an interpreter that decedent told her in a March 19, 1998 telephone conversation that "the house is for people in the Ukraine."

With these facts at hand, we begin our legal analysis with the observation that the law in cases of this type is well settled. Once a fiduciary relationship is found to exist between two parties, " 'transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake or undue influence' " (*Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d 692, 698, quoting *Ten Eyck v Whitbeck*, 156 NY 341, 353). In such situations, if one party deals with another from a position of " 'weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood' " (*Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, supra*, at 699, quoting *Cowee v Cornell*, 75 NY 91, 99-100). Against this backdrop, weighing all of the testimony in this case, we find no basis to disturb Surrogate's Court's determination that respondent failed to rebut the presumption that the conveyance at issue was the result of controlling or undue influence.

Cardona, P. J., Mercure, Spain and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.