[794 NYS2d 2]

In the Matter of National Equipment Corporation, Petitioner, v Norma Ruiz, as Justice of the Supreme Court, et al., Respondents.

First Department, April 5, 2005

### APPEARANCES OF COUNSEL

*Eustace & Marquez*, White Plains (*Mark A. Solomon* and *Rose M. Cotter* of counsel), for National Equipment Corporation, petitioner.

*Newman Fitch Altheim Myers, P.C.*, New York City (*Francine Scotto* of counsel), for Ferrara Foods & Confections, Inc., cross petitioner-respondent.

*Eliot Spitzer, Attorney General*, New York City (*Katherine E. Timon* of counsel), for Hon. Norma Ruiz, respondent.

*The Durst Law Firm, P.C.*, New York City (*John E. Durst, Jr.* of counsel), for Cirro Rodriguez, respondent.

### OPINION OF THE COURT

CATTERSON, J.

In this original CPLR article 78 proceeding brought in this Court pursuant to CPLR 506 (b) (1) and 7804 (b), petitioner National Equipment Corporation (hereinafter referred to as National Equipment) seeks (1) a writ of prohibition against respondent Supreme Court Justice Norma Ruiz, prohibiting her from "impeaching a duly reported verdict" in favor of National Equipment "by entering as a 'verdict' a different award that apportions liability and sets forth certain money damages against Petitioner," which was a defendant and third-party plaintiff in the underlying personal injury lawsuit entitled *Cirro Rodriguez v National Equipment Corporation and Ferrara Foods & Confections, Inc.*, venued in Supreme Court, Bronx County, Index No. 16482/95; (2) a writ of mandamus compelling Justice

Ruiz "to enter the verdict duly reported and recorded on June 7, 2004" in petitioner's favor in the underlying lawsuit; (3) a stay of all proceedings in this matter pending the determination of the petition; and (4) an extension of time for National Equipment to make any posttrial motions up to 30 days after our determination of this proceeding. Ferrara Foods & Confections, Inc. (hereinafter referred to as Ferrara Foods), also a defendant below, filed a cross petition seeking virtually identical relief.

In the underlying personal injury suit, plaintiff Cirro Rodriguez, a respondent in this CPLR article 78 proceeding, asserted a products liability claim against National Equipment and sought money damages for personal injuries which he sustained (the loss of three fingers and a thumb) while using a dough mixer in the course of his employment for Ferrara Foods. The underlying personal injury suit was tried before a jury in May and June 2004 with Justice Ruiz presiding. On June 4, 2004, Justice Ruiz charged the jury on the applicable law and instructed the jurors that they were to decide the case on the basis of answers that they had to give to certain questions on the verdict sheet.

On June 7, 2004, the jury informed the court that it had reached a verdict, returning the verdict sheet (hereinafter referred to as the first verdict sheet), wherein it answered "Yes" to questions 1 through 8, which read as follows:

"1. Did defendant, National Equipment Corporation, distribute the dough mixer involved in this occurrence?

"2. Was the defendant's dough mixer defective?

"3. Did the defect exist when the dough mixer left the possession of National Equipment?

"4. Was the defect a substantial factor in causing the plaintiff's injuries?

"5. Was the third party defendant, Ferrara Foods & Confections negligent?

"6. Was the third party defendant, Ferrara Foods & Confections' negligence a substantial factor in causing the plaintiff's injuries?

"7. Were any of the key safety feature(s) of the dough mixer substantially altered by third party defendant, Ferrara Foods?

"8. Was the substantial alteration made by third-party defendant a substantial factor in causing plaintiff's injury?"

The written instruction following question 8 advised the jury that if it answered "Yes" to that question, it should proceed no further, and should report its verdict to the court. Instead, the jury continued in its deliberations and proceeded to apportion and assess damages in response to questions 9 through 12.[1] Justice Ruiz examined the first verdict sheet and advised counsel that the verdict was inconsistent because the jurors had proceeded beyond question 8.

It is uncontroverted that the attorneys were not shown the jury's responses to the questions on the first verdict sheet at that time. It is also uncontroverted that the first verdict sheet was never announced or published in open court, nor was it affirmed in open court by the jury. The parties were also not afforded the right to poll the jury about its answers on the first verdict sheet. Furthermore, the clerk of the court never entered the answers to the first verdict sheet into the official minutes.

Justice Ruiz then provided the jurors with a blank verdict sheet identical to the first verdict sheet, and instructed them to continue their deliberations and follow the directions after each question on what was now a second verdict sheet. The jury reconvened to deliberate, and, on June 7, 2004, it returned a verdict with responses to the questions on the second verdict sheet. This second verdict sheet had the same answers to questions 1 through 8 as contained in the first verdict sheet, finding that both National Equipment and Ferrara Foods had caused plaintiff's injuries. This time the jury stopped, as directed, after answering question 8 and did not answer questions 9 through 12 on the second verdict sheet. Therefore, while the jury answered "yes" to the questions establishing liability on the part of both defendants, the jury did not apportion liability against either National Equipment or Ferrara Foods (question 12) on the second verdict sheet, and damages were not assessed. The second verdict sheet was then reported and recorded in open court on June 7, 2004, and the jury affirmed its findings as set forth in the second verdict sheet. Although the jury clearly found both defendants liable for plaintiff's injuries, the court

---

1. The jury apportioned liability at 25% for National Equipment, 75% for Ferrara Foods and 0% for plaintiff (question 12), and awarded plaintiff the total sum of $4,862,063.

entered judgment for the defendants due to an error in the instructions on both verdict sheets.

On June 14, 2004, Justice Ruiz held a conference in which she advised the parties that she was sua sponte going to enter judgment consistent with the jury's responses to the questions on the unrecorded first verdict sheet because "the Court inadvertently had the jurors come back with a different verdict because the Court was incorrect when it assumed that the jurors misunderstood an instruction on the verdict sheet."[2] Justice Ruiz subsequently explained that there was an incorrect instruction at the end of question 8 of the first verdict sheet; notwithstanding that incorrect instruction, the jurors correctly completed the first verdict sheet anyway.

Both National Equipment and Ferrara Foods now argue that Justice Ruiz violated their due process rights in sua sponte reversing the outcome of the trial by setting aside the verdict in their favor, which was contained in the second verdict sheet, and entering a judgment in favor of the plaintiff based upon the unannounced, unaffirmed and rejected first verdict sheet; furthermore, the parties had no opportunity to poll the jury following Justice Ruiz' off-the-record meeting with the jury, where she discussed the verdict outside the presence of the parties.

---

2. It should be noted that on June 14, 2004, Justice Ruiz purportedly provided to National Equipment and Ferrara Foods a copy of the first verdict sheet upon which she intended to enter judgment. However, when it was noticed that document contained no signatures of any jurors, Justice Ruiz and her court clerk advised the parties that what had been inadvertently distributed was the court clerk's "scratch copy." The court clerk explained that when he takes a verdict, he writes down the numbers as he is taking it, and this was the court clerk's "scratch copy" from when he actually took the verdict. The court clerk then copied and provided to counsel the first verdict sheet rendered by the jury.

National Equipment and Ferrara Foods took the position that the existence of the scratch copy reflecting a damage award was a mystery because the only verdict actually taken on the record by the court clerk was a defense verdict in favor of National Equipment and Ferrara Foods, where no damages were reported in open court. When Justice Ruiz refused to provide a copy of the scratch copy, which was marked as court exhibit 19, Ferrara Foods commenced a separate CPLR article 78 proceeding for mandamus to compel Justice Ruiz to provide copies of court exhibit 19 to counsel. In *Matter of Ferrara Foods & Confections, Inc. v Ruiz* (11 AD3d 407, 408 [1st Dept 2004]), this Court granted the petition to compel Justice Ruiz to produce a copy of court exhibit 19, "[g]iven the unusual circumstances of this case and the important questions defendants in the underlying action raise as to the validity of the jury verdict." This Court also determined that defendants in the underlying action raised valid questions as to how the court personnel obtained the information contained in the first verdict sheet.

Both National Equipment and Ferrara Foods also argue that Justice Ruiz lacked jurisdiction to enter a verdict in this action based on the first verdict sheet, and that she exceeded her authorized powers in doing so.

Based upon the foregoing, National Equipment and Ferrara Foods are seeking a writ of prohibition against Justice Ruiz entering a verdict in favor of the plaintiff in the amount of $4,862,063, and apportioning liability 25% against National Equipment and 75% against Ferrara Foods. National Equipment and Ferrara Foods are also seeking a writ of mandamus against Justice Ruiz, to compel her to enter the duly reported and recorded verdict in their favor. Additionally, National Equipment maintains that Justice Ruiz' actions unfairly shifted the risks and costs of taking an appeal from the plaintiff in the underlying personal injury action to National Equipment, and unfairly relieved the plaintiff of having to preserve any issue for appellate review.

The Attorney General, on behalf of Justice Ruiz, cross-moved to dismiss the petition on the grounds that it failed to state a cause of action, arguing that prohibition does not lie to enjoin Justice Ruiz from entering judgment on the first verdict because the judge acted consistent with her power and authority. Alternatively, the Attorney General argues that even if Justice Ruiz acted in excess of her jurisdiction or power, prohibition does not lie because National Equipment and Ferrara Foods have access to another adequate legal remedy—they could raise on appeal issues about the legal sufficiency of the judgment.

The Attorney General maintains that mandamus does not lie to compel a discretionary act in which the officer may exercise judgment or discretion. He further argues that any determination concerning this matter is not simply a ministerial act, but one requiring the exercise of discretion by a judicial officer in interpreting the law, and that therefore, mandamus is not warranted here.

It is well settled that prohibition is an extraordinary remedy that lies where there is a clear legal right to the relief requested, and where one seeks either to prevent a court from proceeding or threatening to proceed without jurisdiction, or to restrain a court from exceeding its authorized powers in a proceeding over which it has jurisdiction. (*See Matter of Pirro v Angiolillo,* 89 NY2d 351, 355 [1996]; *Matter of Holtzman v Goldman,* 71 NY2d 564, 569 [1988].) "Prohibition is 'never available merely to correct or prevent trial errors of substantive law or procedure,

however grievous.' " (*Matter of Hirschfeld v Friedman*, 307 AD2d 856, 858 [1st Dept 2003], quoting *La Rocca v Lane*, 37 NY2d 575, 579 [1975], *cert denied* 424 US 968 [1976].) Rather, the "orderly administration of justice requires that correction of litigation errors merely be left to the ordinary channels of appeal or review." (*La Rocca v Lane*, 37 NY2d at 579.)

The case at bar presents one of those rare and unique instances which cries out for just such an extraordinary remedy. There is no doubt that Justice Ruiz exceeded the power and authority of a Supreme Court justice by sua sponte entering a judgment in the underlying action based upon a legal nullity, to wit, the jury's responses to the questions on the first verdict sheet, which was not acknowledged, reported or recorded, and upon which the jury was never polled.

There has been great confusion in case law concerning the distinction between general and special verdicts. Courts frequently disregard this distinction and use the terms interchangeably. In practice, there should be no misunderstanding of the import of CPLR 4111: whether to ask the jury for a general or special verdict is within the sound discretion of the trial court. (*Johnson v Artkraft Strauss Sign Corp.*, 45 AD2d 482 [1st Dept 1974].) In the overwhelming number of civil cases tried before the Supreme Court, CPLR 4111 (c) applies:

> "When the court requires the jury to return a general verdict, it may also require written answers to written interrogatories submitted to the jury upon one or more issues of fact. The court shall give sufficient instruction to enable the jury to render a general verdict and to answer the interrogatories."

Both courts and commentators have frequently confounded CPLR 4111 (c) verdicts with special verdicts. This is error. If a party is entitled to a jury and the court is asking the jury for a general verdict, CPLR 4111 (a) applies rather than CPLR 4111 (b). The better practice in today's varied and complex world of civil litigation is for the court to ask the jury for a general verdict but submit specific questions consistent with CPLR 4111 (c), to enable it to render a general verdict that comports with the charge given. This practice does not convert the verdict to a special verdict wherein the jury decides only specific questions of fact prior to a judge rendering a verdict for either party. (*See Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31 [1980]; *see generally Kennard v Welded Tank & Constr. Co.*, 25 NY2d 324 [1969].) There can be only one view of the verdict

below: that the jury rendered a general verdict supported by special interrogatories. The question remains: which of the verdicts was actually rendered by the jury?

Historians and legal archeologists have long grappled with the genesis of the jury system as we know it today. The popular consensus is that the proclamation of King Ethelred[3] at Wantage in 997 constituted the first formulation of the jury at common law: "And that a gemot be held in every wapontake; and the xii senior thegns go out, and the reeve with them, and swear on the relic that is given them in hand, that they will accuse no innocent man, nor conceal any guilty one." (Plucknett, A Concise History of the Common Law, at 108 [5th ed 1956].) This appears to be consistent with early Scandinavian practice in those areas of England occupied by the Danes. Similarly, the early Frankish kings and princes employed inquests of a number of the most credible people of the area. A royal "inquest" consisted of 12 or more men chosen from every hundred by the reeve, or sheriff, to resolve factual issues for the king. These "jurys" were the chief means of establishing the rights of the king over certain disputes. Through the offices of William the Conqueror, the Norman conquest had the effect of firmly rooting this concept in England. The import of this ancient precedent is plain: the proceedings of the nascent juries were public. This is the bedrock of the common law of England that became a fundamental principle of American jurisprudence at the formation of the Republic.

It is now hornbook law that a jury verdict must be announced in open court, that the parties have an absolute right to have the jury polled, and that once so published in open court, the verdict must be entered by the court clerk in the official minutes of the proceedings. In the landmark New York case of *Root v Sherwood* (6 Johns 68, 69 [1810]), the Supreme Court of Judicature held that "[t]here is no verdict of any force but a public verdict, given openly in court; until it was received and recorded it was no verdict, and the jury had a right to alter it as they may a private verdict." Similarly, in *Blackley v Sheldon* (7 Johns 32, 33-34 [1810]) the court held that:

"The law is well settled, that before a verdict is re-

---

**3.** English King Ethelred II was essentially a Norman duke. He was known as "the Unready" from the Anglo-Saxon "unraed" meaning failure to follow good advice. Borrowing heavily from both Danish and English practice of the day in establishing the proclamation of Wantage may have been one of the few times that Ethelred followed good advice before being exiled to Normandy in 1013.

corded, the jury may vary from the first offer of their verdict, and the verdict which is recorded shall stand; and there are many cases in the books of a jury changing their verdict, immediately after they have pronounced it in open court, and before it was received and entered. (*Dyer*, 204.b. *Plowd.* 209. *Saunders* v. *Freeman, Co. Litt.* 227.b.) The verdict is not recognised as valid and final, until it be pronounced and recorded in open court; and it is reasonable that the jury should be enabled to avail themselves of the *locus penitentiae*, and correct a verdict which they have mistaken, or about which, upon further reflection, they have doubt. (6 *Johns. Rep.* 68.) After the verdict is received, the jury may be examined by the *poll*, if the court please, and then either of the jurors may disagree to the verdict. (*Cro. Eliz. 779.*) (*a*) So when the jury are retired, under the charge of the officer, they may come back into court to hear the evidence of a thing of which they are in doubt. (2 *Roll. Abr.* 676.) (*b*) The law allows the jury all reasonable opportunity, before their verdict is put upon record and they are discharged, to discover and to declare the truth according to their judgment. The court may, also, of its own accord, send the jury back to reconsider their verdict, if it appears to be a mistaken one, and before it is received and recorded." (*See Labar v Koplin*, 4 NY 547 [1851]; *Jackson, ex dem. Fink v Hawks*, 2 Wend 619 [1829]; *Ricchueto v County of Monroe*, 267 AD2d 1012, 1012 [4th Dept 1999] [where the "jury did not announce its verdict in open court, members of the jury were not polled, and plaintiff has not shown that the verdict was entered in the minutes by the Clerk . . . there is no jury verdict upon which the court could grant judgment"]; *Brigham v Olmstead*, 10 AD2d 769 [3d Dept 1960] ["Not until inquiry is made of the whole jury . . . as to their verdict, and it is duly entered by the Clerk is the verdict complete. Until it is thus announced there is no verdict].")

In this case, the only verdict which was duly announced, reported and recorded in open court was the one based on the second verdict questionnaire. Additionally, the jury affirmed its findings as set forth on that second verdict sheet in open court.

There simply is no legal precedent permitting Justice Ruiz to enter judgment on the jury's unpublished responses on the first verdict sheet, one week after the jury was discharged, thus substituting a legal nullity in place of the jury's duly reported and recorded verdict. Furthermore, Justice Ruiz had no authority to enter judgment on the unpublished verdict sheet, which contained an apportionment of liability and an award of damages, after the court had engaged in an improper off-the-record discussion with the jury about the verdict, following the jury's discharge. (*See Moisakis v Allied Bldg. Prods. Corp.*, 265 AD2d 457, 458 [2d Dept 1999], *lv denied* 95 NY2d 752 [2000] [after a verdict had been accepted and the jury discharged, the trial court recalled the jurors a week later and questioned them about possible juror confusion, a procedure the Second Department described as "totally unauthorized"]; *see also Laylon v Shaver*, 187 AD2d 983, 985 [4th Dept 1992] [trial court, which recalled the jurors after discharge in order to have them testify about the amount of damages they had intended to award, and then amended the announced verdict to reflect that amount, erred and "should not have allowed the jury to impeach its verdict"].)

Finally, the Attorney General argues that even if Justice Ruiz exceeded her authority or power here, prohibition still does not lie because National Equipment and Ferrara Foods have access to another adequate legal remedy—an appeal. In this regard,

> "it is crucial to distinguish between an error in procedure or substantive law during a litigation and the arrogation of power which is subject to correction by prohibition. Thus, even constitutional issues involving errors of substantive or procedural law are not cognizable by way of prohibition. If, however, a court acts without jurisdiction, or acts or threatens to act in excess of its powers, and it affirmatively appears that this will be done in violation of a person's, even a party's, rights, but especially constitutional rights, prohibition will lie to restrain the excess of power." (*La Rocca v Lane*, 37 NY2d at 580 [citations omitted].)

Here, Justice Ruiz' actions involve not an error of procedure or substantive law, but rather an arrogation of power for the reasons stated above. Prohibition lies to restrain the trial court from exceeding its authority in entering judgment on the first verdict sheet because the parties' constitutional rights of due process and trial by jury, as well as their right to poll the jury,

were wholly abrogated by Justice Ruiz' change of the verdict sua sponte.

Based upon the foregoing, National Equipment's petition and Ferrara Foods' cross petition for a writ of prohibition to prohibit Justice Ruiz from entering a judgment in favor of the plaintiff, based upon the jury's answers to questions contained on the first verdict sheet, should be granted.

It is well settled that mandamus lies to compel the performance of a purely ministerial act where there is a clear legal right to the relief sought. (*See Matter of Legal Aid Socy. of Sullivan County v Scheinman*, 53 NY2d 12, 16 [1981].) Mandamus may not be awarded to compel an act in which the officer may exercise judgment or discretion. (*See Matter of Gimprich v Board of Educ. of City of N.Y.*, 306 NY 401, 406 [1954].) Where the duty sought to be compelled involves the exercise of discretion or judicial power, mandamus may not be employed to direct the decision-maker to decide in a particular way. (*See Klostermann v Cuomo*, 61 NY2d 525, 540 [1984].)

In this case, the act of entering judgment on the jury's published verdict is clearly a ministerial task. Justice Ruiz did not have discretion to ignore the reported verdict and enter judgment on the first verdict sheet, which was a legal nullity. Rather, the court was required to enter judgment on the only duly reported and recorded verdict in this matter as represented by the jury's answers to the questions contained on the second verdict sheet, and upon which the jury affirmed its findings in open court.

The jury's responses to questions 1 through 8 of the second verdict sheet, however, dictate a result different from that requested by the defendants. CPLR 4111 (c) requires, inter alia, that when "answers are consistent with each other but one or more is inconsistent with the general verdict, the court shall direct the entry of judgment in accordance with the answers, notwithstanding the general verdict." A review of the answers to the specific questions demonstrates that the jury decided the issue of liability in favor of the plaintiff, finding both defendants negligent in answering "yes" to questions 1 through 8. (*Mayer v Goldberg*, 241 AD2d 309, 312 [1st Dept 1997]; *see also Marine Midland Bank v Russo*, 50 NY2d at 41.) There simply is no other possible reading of the answers to these questions, particularly questions 4 and 6. All of the answers lead inexorably to the conclusion that the jury found both defendants responsible for the happening of the accident and the injuries that

resulted therefrom. The court appears to have entered a verdict for the defendants merely because the instructions on the second verdict sheet mistakenly precluded the jury from reaching apportionment and damages.

The court discharged the jury prior to resolving the clear contradiction between the general verdict for the defendants and the answers to the interrogatories. Thus, the liability determination in favor of the plaintiff stands, but the outstanding issues of apportionment of liability between the defendants and an assessment of damages must be tried.

Accordingly, the applications for writs of prohibition and mandamus should be granted to the extent that respondent Supreme Court Justice is prohibited from entering judgment in the underlying action *Cirro Rodriguez v National Equipment Corporation and Ferrara Foods & Confections, Inc.* (Sup Ct, Bronx County, Index No. 16482/95), based on the jury's responses to the interrogatories contained in the first verdict sheet, and is directed to enter interlocutory judgment for the plaintiff on the issue of liability based on the jury's responses to the second set of interrogatories, and otherwise denied, without costs. Respondent Supreme Court Justice's cross motion to dismiss the petition should be denied, without costs. The remaining issues in the underlying action of apportionment of liability between the defendants and an assessment of damages should be tried forthwith.

MAZZARELLI, J.P., MARLOW, ELLERIN and GONZALEZ, JJ., concur.

In this original proceeding pursuant to article 78 of the Civil Practice Law and Rules, applications for writs of prohibition and mandamus granted to the extent that respondent Supreme Court Justice is prohibited from entering judgment in the underlying action *Cirro Rodriguez v National Equipment Corporation and Ferrara Foods & Confections, Inc.* (Sup Ct, Bronx County, Index No. 16482/95), based on the jury's responses to the interrogatories contained in the first verdict sheet, and is directed to enter interlocutory judgment for the plaintiff on the issue of liability based on the jury's responses to the second set of interrogatories, and otherwise denied, without costs. Respondent Supreme Court Justice's cross motion to dismiss the petition denied, without costs. The remaining issues in the underlying action of apportionment of liability between the defendants and an assessment of damages should be tried forthwith.