■ In the Matter of the Estate of EMILIO PELLEGRINO, Deceased. VIRGINIA NORA, Appellant; THERESA PELLEGRINO, Respondent. [817 NYS2d 121]—

In a contested probate proceeding, the proponent appeals, as limited by her brief, from so much of a decree of the Surrogate's Court, Suffolk County (Czygier, S.), dated February 9, 2005, as, after a nonjury trial, denied probate of a second codicil on the ground of undue influence.

Ordered that the decree is affirmed insofar as appealed from, with costs payable by the proponent personally.

On July 26, 1999 the decedent executed a will in which he left all of his assets to his grandson. A first codicil to the will, dated May 11, 2000, set forth the decedent's wishes regarding burial arrangements. Thereafter, on November 10, 2000, the decedent executed a second codicil in which he disinherited his grandson and named his sister-in-law, who is the proponent in this proceeding, the sole beneficiary of his estate. At the time he executed the codicil, the decedent was 84 years old, hospitalized, and in failing health due to complications from prostate cancer, renal failure, hypertension, insulin dependent diabetes, and two strokes. The decedent died two months later on January 11, 2001. At the conclusion of a nonjury trial, the Surrogate denied probate of the second codicil, concluding that it was the product of undue influence. We affirm.

Contrary to the proponent's contention, the determination by the Surrogate that the second codicil was the product of undue influence was not against the weight of the evidence. The determination of the Surrogate, who presided at the trial and heard all of the testimony, is entitled to great weight, particularly where, as here, the case hinges on the credibility of witnesses (*see Matter of Margolis*, 218 AD2d 738 [1995]; *Matter of Feinberg*, 150 AD2d 376 [1989]; *Matter of Thorne*, 108 AD2d 865 [1985]). The evidence credited by the Surrogate supports a conclusion that the proponent engaged in a calculated course of conduct designed to sway the decedent into changing his testamentary dispositions and disinherit his grandson, with whom he had previously enjoyed a close and loving relationship. Considering all of the facts and circumstances of this case, including the decedent's weakened physical condition at the time the second codicil was executed, there was sufficient evidence to establish that the second codicil was the result of "a subtle, but pervasive, form of coercion and influence, by which [the proponent] overwhelmed and manipulated decedent's volition to advance her own interests" (*Matter of Antoinette*, 238 AD2d 762, 763 [1997]; *see Matter of Rosen*, 296 AD2d 504 [2002]; *Matter of Itta*, 225 AD2d 548 [1996]). Krausman, J.P., Spolzino, Lifson and Dillon, JJ., concur.