■ In the Matter of MARTIN NEARY, Deceased. AVA BAKER, Appellant; KATHLEEN TYNDALL et al., Respondents. [843 NYS2d 689]—

In a contested probate proceeding, the proponent, Ava Baker, appeals, as limited by her brief, from so much of a decree of the Surrogate's Court, Kings County (Tomei, S.), dated May 12, 2006, as, upon a decision of the same court dated December 8, 2005, made after a nonjury trial, denied probate of the decedent's will on the ground of undue influence.

Ordered that the decree is affirmed insofar as appealed from, with costs payable by the appellant personally.

After the decedent was hospitalized in 1997 for congestive heart failure and a heart attack, he gave a limited power of attorney to his long-time associate, Robert Baker, to handle his finances. On April 20, 2000 the decedent executed a will in which he made two specific bequests, and left his residuary estate to the proponent. At the time he executed the will, the decedent was 88 years old, and completely dependent upon the proponent, his live-in home health care aide, for all of his personal needs. At some point prior to the execution of the will, the proponent obtained a power of attorney form which the decedent executed, stripping Robert Baker of that authority and instead vesting it in her. The proponent arranged for the services of an attorney to draft the will, although the attorney admittedly was not well versed in the drafting of wills. After the proponent telephoned the attorney regarding his failure to timely draft the will, the attorney rushed to complete the will for the decedent to execute. The day after the execution of the will, the decedent was hospitalized on an emergency basis, suffering from, inter alia, bilateral pneumonia, and acute respiratory and cardiac arrest.

Contrary to the proponent's contention, the determination by the Surrogate, after a nonjury trial, that the will was the product of undue influence, was warranted by the facts. "The determination of the Surrogate, who presided at the trial and heard all of the testimony, is entitled to great weight, particularly where, as here, the case hinges on the credibility of witnesses" (*Matter of Pellegrino*, 30 AD3d 522, 523 [2006]). The evidence credited by the Surrogate amply supports a conclusion that the proponent was in a confidential relationship with the decedent (*see Matter of Neenan*, 35 AD3d 475, 476 [2006]) and engaged in a course of conduct designed to sway the decedent into leaving the bulk of his estate to her. In light of all of the circumstances

of this case, including the decedent's weakened physical condition at the time the will was executed, there was sufficient evidence to establish that the will was the result of "a subtle, but pervasive, form of coercion and influence, by which [the proponent] overwhelmed and manipulated decedent's volition to advance her own interests" (*Matter of Pellegrino*, 30 AD3d at 523, quoting *Matter of Antoinette*, 238 AD2d 762, 763 [1997]). Schmidt, J.P., Fisher, Lifson and Carni, JJ., concur.