■ NATALIA COKINOS OAKES, Individually and as Successor Trustee of the HERBERT C. OAKES LIVING TRUST, as Assignee of Herbert C. Oakes, Jr. and Another, and as Guardian of LEOPOLD V. OAKES, an Infant, Respondent, v BETTY O. MUKA, Appellant. [893 NYS2d 677]—

Per Curiam.

In this action, which has been before us on two previous occasions (*Oakes v Muka*, 56 AD3d 1057 [2008]; *Oakes v Muka*, 31 AD3d 834 [2006]), plaintiff sought a declaration that the Herbert C. Oakes Living Trust, as amended in September 2000, is in full force and that all subsequent appointments, amendments and affidavits are of no effect because defendant used fraud, duress and undue influence upon Herbert C. Oakes (hereinafter decedent) to make those changes. The matter proceeded to trial, at the conclusion of which the jury rendered a special verdict in favor of plaintiff, finding that decedent was in a

weakened physical and mental condition during the time period that he made the changes and that defendant failed to prove that no undue influence was perpetrated upon decedent. Accordingly, Supreme Court entered judgment invalidating the several changes, imposing a constructive trust over the trust assets and enjoining defendant from conducting any further transactions with respect to any of the assets. Defendant thereafter unsuccessfully moved to set aside the verdict. She now appeals, and we affirm.

We reject defendant's contention that the jury's verdict is against the weight of the evidence. "Under the doctrine of constructive fraud, where a fiduciary relationship existed between two parties such that they were dealing on unequal terms due to one party's weakness, dependence or trust justifiably reposed upon the other and unfair advantage is rendered probable, the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood" (*Mazza v Fleet Bank*, 16 AD3d 761, 762 [2005] [internal quotation marks and citations omitted]; *see Matter of Mazak [Nauholnyk]*, 288 AD2d 682, 684 [2001]).

Here, the existence of a confidential relationship between defendant and decedent was clearly established. In June 2001, at defendant's urging, decedent moved from his home in Texas to live with defendant in New York. Decedent had no friends or other family in the area and relied entirely on defendant for his day-to-day care. At the time of his move, decedent was having trouble ambulating as a result of suffering from Parkinson's disease and, according to correspondence authored by defendant, he also displayed symptoms of Alzheimer's disease. Between January and February 2002, decedent fell three times requiring hospitalization. His care providers opined that he was suffering from Alzheimer's disease. Medical records and letters written by defendant during the months that followed, when decedent made a number of changes to his will and trust, described decedent as, among other things, consistently confused, "not oriented to time [or] place," suffering from hallucinations and delusional. By the time decedent executed the affidavit—prepared by defendant—naming defendant as the sole beneficiary under the trust, decedent was in a nursing home and in a "rapidly deteriorat[ing]" mental condition. Given decedent's weakened condition, his reliance on defendant and defendant's admitted position of trust and confidence regarding

his care and finances,* a fiduciary relationship existed between the parties (*see Mazza v Fleet Bank*, 16 AD3d at 762; *Matter of Connelly*, 193 AD2d 602, 603 [1993], *lv denied* 82 NY2d 656 [1993]).

As plaintiff made such a showing, the burden shifted to defendant to come forward with clear proof that the execution of the various documents was fair, well understood and free from fraud, deception or undue influence (*see Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d 692, 699 [1978]; *Mazza v Fleet Bank*, 16 AD3d at 762; *Matter of Connelly*, 193 AD2d at 603). Defendant failed to do so. She presented no testimony from the witnesses to the execution of the various documents or persons who cared for decedent while he was hospitalized or in a nursing home. Rather, she proffered only her own self-serving testimony and that of her son, which fell far short of demonstrating that no deception, undue influence or fraud was perpetrated upon decedent. Simply put, the evidence did not so preponderate in defendant's favor that the jury's verdict could not have been reached on any fair interpretation of the evidence (*see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *Strader v Ashley*, 61 AD3d 1244, 1245 [2009], *lv denied* 13 NY3d 756 [2009]).

Nor are we persuaded by defendant's challenges to Supreme Court's use of the special verdict form or the questions contained therein. Whether to ask the jury for a general or special verdict is a matter left to the sound discretion of the trial court (*see* CPLR 4111 [a]; *Matter of National Equip. Corp. v Ruiz*, 19 AD3d 5, 11 [2005]). Here, the questions asked in the special verdict sheet were consistent with the court's instructions (*see Powell v Sodus Cold Stor. Co.*, 289 AD2d 1000, 1002 [2001]), as well as the elements of constructive fraud (*see generally Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d at 699). By failing to request the inclusion of any other factual questions in the special verdict form, defendant is deemed to have waived her right to a trial by jury of the omitted issues (*see* CPLR 4111 [b]; *Loughry v Lincoln First Bank*, 67 NY2d 369, 380 [1986]; *Sorrentino v Bohbot Entertainment & Media*, 265 AD2d 245, 245 [1999]).

Finally, Supreme Court's imposition of a constructive trust is amply supported by the record. As a " 'fraud-rectifying' remedy" (*Bankers Sec. Life Ins. Socy. v Shakerdge*, 49 NY2d 939,

* Notably, in her answer, defendant admitted the allegation in the complaint that decedent placed great trust and confidence in her on account of their brother/sister relationship during the relevant time period when the numerous changes to his will and trust were made.

940 [1980]), the "ultimate purpose of a constructive trust is to prevent unjust enrichment and . . . it may be imposed whenever necessary in order to satisfy the demands of justice" (*Matter of Knappen*, 237 AD2d 677, 679 [1997], *lv denied* 90 NY2d 802 [1997] [internal quotation marks and citations omitted]; *see Simonds v Simonds*, 45 NY2d 233, 241 [1978]; *Gaglio v Molnar-Gaglio*, 300 AD2d 934, 938 [2002]). Given the jury's findings, the confidential relationship that existed between decedent and defendant and the circumstances under which the changes to decedent's will and trust were effectuated, defendant's retention of the trust funds would be unjust (*see Sharp v Kosmalski*, 40 NY2d 119, 123 [1976]; *Johnson v Lih*, 216 AD2d 821, 823 [1995]). Thus, we find that equitable considerations support the granting of a constructive trust.

Defendant's remaining contentions, to the extent that they are properly before us, have been reviewed and found to be lacking in merit.

Peters, J.P., Lahtinen, Malone Jr., Kavanagh and Stein, JJ., concur. Ordered that the judgment and order are affirmed, without costs.