In the Matter of the Estate of MURIEL M. NEALON, Deceased. CHRISTOPHER J. NEALON, as Executor of MURIEL M. NEALON, Deceased, Respondent; PETER J. NEALON, Respondent, and TRACEY McGANN, Now Known as TRACEY NEALON, Appellant. [962 NYS2d 481]—

Spain, J. Appeal from a judgment of the Surrogate's Court of Schenectady County (Versaci, S.), entered January 7, 2011, upon a verdict rendered in favor of petitioner.

Decedent passed away in 2004, leaving three living sons, including petitioner who, as the executor of decedent's estate, commenced this proceeding seeking to recover property allegedly belonging to the estate from his brother, respondent Peter J. Nealon, and Nealon's then wife, respondent Tracey McGann* (see SCPA 2103 [1]). Decedent moved in with respondents in 2002, after being diagnosed with Alzheimer's disease, and resided with them until her death. During that time, decedent contributed significant financial support to an addition to respondents' home, which included a bedroom for decedent. In this proceeding, petitioner challenges approximately $127,000 in transfers made by decedent to or for the benefit of respondents, alleging lack of capacity and undue influence.

Surrogate's Court (Kramer, S.) granted respondents' motion for summary judgment dismissing the petition. On appeal, we reversed, finding that although respondents were entitled to summary judgment on the issue of capacity, triable issues of fact existed with respect to petitioner's claim of undue influence (57 AD3d 1325, 1328 [2008]). The matter proceeded to trial and, after finding, as a matter of law, that a confidential relationship existed between respondents and decedent, Surrogate's Court (Versaci, S.) sent the question of undue influence to the jury, which rendered a verdict against respondents in the amount of $123,751.95. Judgment was entered, upon which only McGann now appeals.

We must reverse. Under the doctrine of "constructive fraud,"

---

* Respondents were married in 2004 and divorced in 2008.

where a confidential relationship exists between two parties to a transaction "such that they were dealing on unequal terms due to one party's weakness, dependence or trust justifiably reposed upon the other and unfair advantage is rendered probable," the burden of proof with respect to allegations of undue influence will be shifted to the stronger party to show, by clear and convincing evidence, that no undue influence was used (*Oakes v Muka*, 69 AD3d 1139, 1140-1141 [2010], *appeal dismissed* 15 NY3d 867 [2010], quoting *Mazza v Fleet Bank*, 16 AD3d 761, 762 [2005] [internal quotation marks and citations omitted]; *see Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d 692, 695, 698-699 [1978]). In determining whether a confidential relationship exists, "the existence of a family relationship does not, per se, create a presumption of undue influence; there must be evidence of other facts or circumstances showing inequality or controlling influence" (*Feiden v Feiden*, 151 AD2d 889, 891 [1989]). The existence of such a relationship will ordinarily be a question of fact (*see Matter of Prievo v Urbaniak*, 64 AD3d 1240, 1241 [2009]; *see e.g. Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d at 698-699; *Oakes v Muka*, 69 AD3d at 1140-1141; *Mazza v Fleet Bank*, 16 AD3d at 762; *Matter of Mazak [Nauholnyk]*, 288 AD2d 682, 684 [2001]; *Matter of Antoinette*, 238 AD2d 762, 764 [1997]; *Feiden v Feiden*, 151 AD2d 889, 891 [1989]; *compare Matter of Jacobs*, 93 AD3d 917, 918 [2012]).

Here, following his case-in-chief, petitioner requested Surrogate's Court to find, as a matter of law, that a confidential relationship had been established. The court reserved decision and, following the close of proof, granted the motion, ruling that a confidential relationship existed as a matter of law, thereby shifting the burden of proof to respondents to establish, by clear and convincing evidence, that the questioned transactions were each made free of any undue influence. Although petitioner introduced evidence that might support a factual determination that a confidential relationship existed, such as decedent's complete dependence on respondents due to her combined mental and physical deterioration, respondents were entitled to have the jury consider all the evidence regarding decedent's relationship with respondents and to determine as a factual matter whether decedent maintained the ability to exercise free will (*see Matter of Antoinette*, 238 AD2d at 764; *Feiden v Feiden*, 151 AD2d at 891). Accordingly, a new trial is necessary (*see Imbierowicz v A.O. Fox Mem. Hosp.*, 43 AD3d 503, 504 [2007]).

In so holding, we reject McGann's argument that she was

entitled to a directed verdict because petitioner failed to establish a prima facie case of undue influence. In our view, the record evidence of numerous checks (written by McGann or Nealon and signed by decedent), ATM withdrawals and electronic transfers from decedent's account for the benefit of respondents during a time when decedent was unquestionably vulnerable, in amounts significant enough to entirely deplete decedent's checking accounts, was sufficient proof of undue influence to survive summary disposition (*see Matter of Antoinette*, 238 AD2d at 763).

Given that this matter must be remitted for a new trial, for the purpose of guidance we will briefly address McGann's contentions that certain evidentiary errors were made at trial in the application of the Dead Man's Statute (*see* CPLR 4519). The statute precludes an interested party from being "examined as a witness in his [or her] own behalf or interest . . . concerning a personal transaction or communication between the witness and the deceased person" (CPLR 4519; *see Miller v Lu-Whitney*, 61 AD3d 1043, 1045 [2009]). Given that the "purpose of the rule is 'to protect the estate of the deceased from claims of the living who, through their own perjury, could make factual assertions which the decedent could not refute in court' " (*Poslock v Teachers' Retirement Bd. of Teachers' Retirement Sys.*, 88 NY2d 146, 151 [1996], quoting *Matter of Wood*, 52 NY2d 139, 144 [1981]; *see ROI, Inc. v Hidden Val. Realty Corp.*, 45 AD3d 1010, 1011 [2007]), it will not preclude any testimony elicited by the representative of the estate, nor does it preclude testimony of transactions between decedent and a non-interested third party (*see Durazinski v Chandler*, 41 AD3d 918, 920 [2007]). Further, the statute's protections with regard to a particular transaction may be waived where the representative "testifies in his [or her] own behalf concerning a personal transaction of his adversary with the deceased" or when he or she "elicit[s] testimony from an interested party on the personal transaction in issue" (*Matter of Wood*, 52 NY2d at 145; *see Matter of Breistol*, 64 AD3d 1122, 1123-1124 [2009]).

Here, had petitioner limited his proof to documentary evidence of decedent's banking transactions and not introduced any testimony regarding transactions between decedent and respondents, the door would not have been opened to respondents' testimony concerning decedent's intentions with respect to those transfers (*see Matter of Wood*, 52 NY2d at 145-146; *see also* CPLR 4519; *Miller v Lu-Whitney*, 61 AD3d at 1045). However, in his direct case, petitioner also introduced respondents' deposition testimony wherein respondents explained that

they would write checks covering expenses related to home improvements and decedent would sign them, and that decedent frequently gave respondents money to cover household expenses, groceries and other personal expenses. This testimonial evidence about specific transactions between respondents and decedent, introduced by petitioner, opened the door to respondents' testimony at trial regarding those specific transactions, thus rendering erroneous some of Surrogate's Court's later rulings sustaining objections based on CPLR 4519 (*see Matter of Breistol*, 64 AD3d at 1123-1124; *compare Matter of Wood*, 52 NY2d at 145-147).

Peters, P.J., Garry and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and matter remitted to the Surrogate's Court of Schenectady County for a new trial.