█ In the Matter of the Estate of Harry L. Graeve, Deceased. Debra Lechleitner, as Limited Administrator of the Estate of Harry L. Graeve, Deceased, Appellant; Harry S. Graeve et al., Respondents. [979 NYS2d 197]—

Lahtinen, J.

Harry L. Graeve (hereinafter decedent) died in November 2009 and petitioner, his daughter, was granted limited letters in

March 2011 to pursue a discovery proceeding pursuant to SCPA 2103. She sought information regarding: decedent's transfer shortly before his death of his home (valued at about $180,000) to his son, respondent Harry S. Graeve (hereinafter respondent); the location of $200,000 in cash that was allegedly missing;* and the transfer of decedent's 2008 truck to respondent. Respondent Karen Szubinski, respondent's spouse, was added as a respondent and, following disclosure, petitioner moved for summary judgment declaring that a confidential relationship existed between respondents and decedent. Surrogate's Court denied petitioner's motion and petitioner now appeals.

We affirm. The existence of a confidential relationship shifts the burden to the stronger party in such a relationship to prove by clear and convincing evidence that a transaction from which he or she benefitted was not occasioned by undue influence (*see Matter of Nealon*, 104 AD3d 1088, 1089 [2013], *affd* 22 NY3d 1045 [2014]; *Oakes v Muka*, 69 AD3d 1139, 1140-1141 [2010], *appeal dismissed* 15 NY3d 867 [2010]). "In determining whether a confidential relationship exists, 'the existence of a family relationship does not, per se, create a presumption of undue influence; there must be evidence of other facts and circumstances showing inequality or controlling influence' " (*Matter of Nealon*, 104 AD3d at 1089, quoting *Feiden v Feiden*, 151 AD2d 889, 891 [1989]).

The proof was inadequate to establish a confidential relationship as a matter of law. Decedent died at age 84, a short time after being diagnosed with cancer. About two weeks before his death, he was admitted to a hospital and then was transferred to a nursing home. Prior to such time, he lived basically in an independent fashion. Respondents resided on the same street and, thus, visited more frequently than petitioner, who lived further away. Respondents assisted decedent with some chores and household matters, but he certainly was not completely dependent on respondents nor was there proof that his mental condition had deteriorated. Although respondent was listed on decedent's bank account and safe deposit box, there is no evidence that he accessed the accounts or funds prior to decedent's passing or successfully exerted any pressure on decedent regarding his finances. Decedent's attorney testified at a deposition that, when respondent was not present in the room, he met with decedent at the nursing home and decedent ably discussed his estate and executed the transfer of real property. The attorney observed that, even at that time within days of his death,

---

* Respondent asserted that decedent gave the cash to petitioner, but she denied receiving the money.

decedent was "bold in his voice" and "knew what he wanted." This record does not reflect the type of inequality and controlling influence such that, as a matter of law, respondents were exerting a confidential relationship (as that term is used in the context of a proceeding of this nature) rather than simply acting out of familial affection or duty.

Rose, J.P., McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, with costs.

