In a turnover proceeding pursuant to SCPA 2103 to recover certain property on behalf of a decedent’s estate, Janice Clark appeals, as limited by her brief, from so much of a decree of the Surrogate’s Court, Kings County (Lopez Torres, S.), dated *857 March 7, 2012, as, upon an order of the same court dated October 15, 2007, made after a hearing, determining that certain real property was not an asset of the estate, and upon an amended decision of the same court dated October 21, 2011, made after a nonjury trial, determining that the proceeds of two bank accounts were assets of the estate, granted the amended petition to the extent of directing Janice Clark to pay the principal sum of $51,968.43, and the petitioner cross-appeals, as limited by his brief, from so much of the same decree as directed Janice Clark to pay to him individually, rather than to the estate, the principal sum of only $51,968.43.
Ordered that the decree is modified, on the law, by deleting the provision thereof directing Janice Clark to pay to the petitioner individually the principal sum of $51,968.43, and substituting therefor a provision directing Janice Clark to pay the principal sum of $103,936.86 to the decedent’s estate; as so modified, the decree is affirmed insofar as appealed and cross-appealed from, with costs to the petitioner.
The decedent died on November 16, 1998, at the age of 88. She was survived by two children, Stanley Boatwright and Janice Clark, each entitled to 50% of her estate. Boatwright was granted limited letters of administration pursuant to SCPA 2103 to discover assets of the estate. In such capacity, he commenced this proceeding alleging that Clark was in possession of assets of the estate, including (1) $45,000 in withdrawals from the decedent’s Dime Savings account held in trust for Clark and Boatwright; (2) $58,936.86, representing the decedent’s share of proceeds of her sister’s estate, which were deposited into the decedent’s Roslyn Savings account held in trust for Clark; and (3) real property on MacDonough Street in Brooklyn (hereinafter the premises).
In her answer to the amended petition, Clark relied, in part, on a general release executed by Boatwright on November 25, 1998, releasing any claim to the premises in exchange for $55,000. After a hearing on the validity of the release and an additional renunciation executed by Boatwright on the same day, the Surrogate’s Court, by order dated October 15, 2007, determined that the release was valid and denied Boatwright’s claim for turnover of the premises to the estate.
Boatwright’s remaining claims concerning the subject bank accounts proceeded to trial. After trial, the Surrogate’s Court determined that the disputed funds were rightfully assets of the estate, and granted the amended petition to the extent of directing Clark to turn over half of the wrongfully withheld funds to Boatwright individually. Clark appeals. Boatwright cross-appeals *858 from so much of the decree as directed Clark to pay to him individually the principal sum of only $51,968.43.
In its order dated October 15, 2007, the Surrogate’s Court properly denied Boatwright’s claim for the turnover of the premises to the estate. “Generally, ‘a valid release constitutes a complete bar to an action on a claim which is the subject of the release’ ” (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011], quoting Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 98 [2006]). A release may, however, be invalidated for any of the traditional bases for setting aside written agreements, such as duress, fraud, or mutual mistake, with the burden on the party seeking to invalidate the release (see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276). Contrary to Boatwright’s contention, he failed to establish that the release was procured by fraud or undue influence based upon, among other things, a previous transfer of the premises to Clark without Boatwright’s knowledge. “[I]t is not a prerequisite to the enforceability of a release that the releasor be subjectively aware of the precise claim he or she is releasing” (Mergler v Crystal Props. Assoc., 179 AD2d 177, 180 [1992]; sec Liling v Segal, 220 AD2d 724 [1995]). Moreover, the evidence revealed that Boatwright negotiated the terms of the release and knowingly and voluntarily released any claim to the premises in exchange for consideration. His failure to consult with an attorney does not preclude enforcement of the release (see Skluth v United Merchants & Mfrs., 163 AD2d 104, 107 [1990]).
The Surrogate’s Court properly determined that Clark wrongfully withheld from the estate the funds in the subject Dime Savings account and Roslyn Savings account, totaling $103,936.86. Generally, the burden of proving undue influence rests with the party asserting its existence (see Hearst v Hearst, 50 AD3d 959, 962 [2008]; Matter of Connelly, 193 AD2d 602 [1993]). However, if a confidential relationship exists, the burden is shifted to the beneficiary of the transaction to prove by clear and convincing evidence “that the transaction was fair, open, voluntary, and well understood, and therefore free from undue influence” (Campbell v Campbell, 50 AD3d 614, 615 [2008]; see Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692, 698 [1978]; Oakes v Muka, 69 AD3d 1139 [2010]).
Here, Clark had a fiduciary relationship with the decedent in relation to the decedent’s subject bank accounts by virtue of powers of attorney she held for those accounts (see Matter of Ferrara, 7 NY3d 244, 254 [2006]; Matter of Audrey Carlson Revocable Trust, 59 AD3d 538 [2009]; Semmler v Naples, 166 AD2d *859 751 [1990]; Moglia v Moglia, 144 AD2d 347 [1988]). Thus, a presumption of impropriety attaches to the withdrawals from the decedent’s Dime Savings account, in light of Clark’s deposits of those funds into her own checking account on the same dates as the withdrawals (see Mantella v Mantella, 268 AD2d 852 [2000]; Matter of Roth, 283 AD2d 504 [2001]). Moreover, a confidential relationship existed at the time of the October 2, 1998, deposit of the proceeds from the estate of the decedent’s sister into the decedent’s Roslyn Savings account held in trust for Clark, by virtue of the fact that the decedent was then homebound and reliant upon Clark for her daily needs (see Matter of Connelly, 193 AD2d 602 [1993]; Hennessey v Ecker, 170 AD2d 650 [1991]). The Surrogate’s Court credited Boatwright’s testimony on this issue, and that credibility determination is to be accorded great weight (see Matter of Coviello, 57 AD3d 662, 663 [2008]). This deposit into an account held in trust for Clark, made mere weeks before the decedent’s death, is subject to the same presumption of impropriety as it would be had Clark taken such funds directly (see Matter of Audrey Carlson Revocable Trust, 59 AD3d at 540; Matter of Clinton, 1 Misc 3d 913[A], 2004 NY Slip Op 50056[U] [Sur Ct, NY County 2004]).
Clark failed to meet her burden of establishing by clear and convincing evidence that the decedent intended to make a gift or loan to her of the subject funds and that the transactions were “fair, open, voluntary, and well understood, and therefore free from undue influence” (Campbell v Campbell, 50 AD3d at 615; see Mantella v Mantella, 268 AD2d 852 [2000]). The Surrogate’s Court found Clark’s explanations of the transactions evasive, dissembling, and incredible, and the court’s credibility determination is to be accorded great weight (see Matter of Coviello, 57 AD3d at 663). We find no basis to disturb the determination of the Surrogate’s Court that the subject funds are rightfully assets of the estate.
However, the Surrogate’s Court erred in directing Clark to pay half of the wrongfully withheld funds to Boatwright in his individual capacity. Boatwright commenced this proceeding in his capacity as limited administrator of the decedent’s estate, seeking turnover of the disputed assets to the estate, and therefore, the wrongfully withheld funds must be returned to the estate for administration (cf. Matter of O’Connell, 98 AD3d 673 [2012]). Accordingly, we modify the decree to direct Clark to pay the full amount of the wrongfully withheld funds to the estate, for subsequent distribution to the parties as beneficiaries of the estate. Balkin, J.E, Chambers, Lott and Hinds-Radix, JJ., concur.