*1070 OPINION OF THE COURT
C. Raymond Radigan, J.
Is the property of an inter vivos trust which reverts to the settlor’s estate on her death subject to executor’s commissions? This is the prime issue raised on a motion made by Citibank and John Parkinson, III, for partial summary judgment dismissing objections Nos. 1 and 2 interposed to the settlement of their final account. The alternative question presented is whether commissions may be disallowed where the services rendered in administering certain assets is minimal in comparison to the compensation?
The objectants, a daughter and two grandchildren, request that the papers filed by them in opposition to petitioner’s application be treated as a cross motion for summary judgment sustaining objection No. 2 as a matter of law, and denying dismissal of objection No. 1 because of the existence of triable factual issues.
In 1948, the decedent created a revocable trust for her own benefit pursuant to an agreement which provided: "Upon the death of the donor, this trust, shall terminate and the property then held in the trust estate, if any, less so much thereof as may be required to pay the necessary expenses of winding up the trust estate shall thereupon revert to the estate of the donor”.
Objection No. 1 relates to the entitlement of Citibank and John Parkinson, III, as executors to statutory commissions on assets having a value of $4,611,527.13 that passed to the estate from the inter vivos trust. Although one of the executors, Mr. Parkinson, was also a cotrustee of the trust, no question is presented as to the payment of double commissions. Mr. Parkinson was not entitled to any commission on paying over the trusts assets. Under the trust agreement, as amended, John Parkinson, III, in lieu of any commission to which he might otherwise be entitled, received a sum equal to 2% of the gross income (excluding capital gains) while his cotrustee, Philip James Roosevelt, who is not an executor, was allotted $6,000 a year.
Objection No. 1 asserts the executors are not entitled to commissions on the assets received from the trust because:
(1) no trust assets, except for distributions required to pay taxes and administration expenses, were received by the executors until March 23, 1983 or almost one year after decedent’s death;
*1071 (2) the executors only had responsibility for the two million plus in assets used to fund the three residuary trusts established under decedent’s will for the period from March 23, 1983 to November 3, 1983 or 223 days; and
(3) the will and trust agreement, if properly drafted, would have added the probate estate to the revocable trust which should have contained the continuing trusts for decedent’s family members.
In essence, respondent’s real complaint is that poor estate planning swelled the probate estate by over $4,500,000 and subjected that principal to the payment of executorial commissions.
The court has no power either to reshape decedent’s plans or to remake the instruments she executed. The provision of the trust that its assets shall revert, upon the creator’s death, to her estate is too plain and direct to be made the subject of construction. The clear and obvious intent of the donor of the trust cannot be ignored and must be given effect. (Bank of N. Y. & Trust Co. v Hamersley, 210 App Div 57, 58, affd 240 NY 558.)
On the settlement of his accounts a fiduciary is allowed for his services as a fiduciary commissions for the receipt and disbursement of money coming into his hands (SCPA 2307 [1], [2]). Sums received and paid out, by statute, are made the basis of computation (Phoenix v Livingston, 101 NY 451; Matter of Hurst, 111 App Div 460).
No commissions are payable if the property does not come into the fiduciary’s hands at least in legal effect or in contemplation of law (Matter of Runk, 181 App Div 461, affd without opn 224 NY 570; 4B Warren’s Heaton, Surrogates’ Courts § 419, [[ 2 [a] [6th ed]) except as may otherwise be provided by statute (see, SCPA 2307 [2]). The payment of commissions is not a gratuity but compensation for services rendered in collecting and administering the assets of the estate and in distributing its net proceeds (Matter of Ellmers, 180 Misc 835, 837).
Despite respondent’s denigration of their services, the executors here unquestionably actively undertook and processed the administration of the estate. The executors in consideration of the distribution to them of the cash and securities constituting the trust principal agreed, subject to the approval of the trustees, to wind up the trust and to pay the expenses thereof. Under the leadership of Citibank and with the cooperation of *1072 Mr. Roosevelt, the cotrustee of the inter vivos trust, the executors controlled and directed the distribution of assets from the trust to the estate, and developed an over-all tax plan for the trust, estate and the three residuary trusts created under the decedent’s will. Under the plan, the winding up of the trust was deferred to allow it to sell off securities so that the gains realized would be taxed at the more advantageous graduated rates available to a trust. A deferral of income tax liability was thereby also made possible. It is important to note that on Mrs. Parkinson’s death the trust by its terms terminated, and the property held in trust by express direction of Mrs. Parkinson reverted to her estate. This fact differentiates this case from those on which respondents place reliance (see, Estate of Warner, NYLJ, June 22, 1977, at 16, cols 3-5; Estate of Heilprin, NYLJ, Feb. 6, 1976, at 12, col 1; Estate of Perry, NYLJ, Aug. 5, 1975, at 14, cols 1-4) in which the court found the trust funds were never intended by the testatrix as donor to become part of her testamentary estate. Here, the merger of the trust property into the estate was provided for explicitly. The mandatory provisions of SCPA 2307 (1) therefore require that the commissions specified in the statute be paid in the absence of mathematical error or allegations of misconduct attributable to the fiduciaries. To hold otherwise would be tantamount to judicial creation of procedures to attack final accounts on grounds beyond those set forth in the Surrogate’s Court Procedure Act (Matter of Reohr, 71 AD2d 161, 163).
Respondents argue that before granting summary judgment the court must first make a factual finding regarding the decedent’s knowledge and awareness of the exposure of the assets of the trust to the additional expense of two executors’ commissions. That argument is rejected. The burden of the respondents on this motion is to lay bare their proof and to demonstrate the existence of bona fide issues of fact. They have not done so. Neither have they raised any issue of a constructive fraud practiced on the decedent with respect to the payment of commissions. This is not a case where an attorney/draftsman without proper disclosure to the client gains nomination as the fiduciary (Matter of Weinstock, 40 NY2d 1; Matter of Laflin, 111 AD2d 924; Matter of Harris, 123 Misc 2d 247). Neither does this case, as was discussed before, involve the payment of double commissions. Advancement of the suggestion that decedent may not have been properly advised concerning the estate’s liability for commissions is *1073 conjectural. Supposition is not a substitute for showing the existence of disputed factual issues.
On the papers before it, this court may not reform decedent’s will or the agreement of trust simply because alternative plans for disposition of her assets were available. The circumstance that the executors’ commissions increased dramatically because trust assets were poured into the estate presents no ground for denial of the statutory compensation allowed executors. Petitioner’s motion for partial summary judgment as to objection No. 1 is accordingly granted.
Objection No. 2 is interposed alternatively and asserts in the event that commissions are payable on the inter vivos trust assets they should be disallowed with respect to the $2,132,724.57 which the trust turned over to the estate to pay State and Federal estate taxes. Respondents maintain these payments constituted paper transactions in which the executors acted as mere conduits without assuming any significant responsibility.
On decedent’s death, the portfolio of the trust contained $1,250,000 in 4lA% United States Treasury bonds due in 1992. These so-called "flower bonds” were held in a custodial account at Citibank. On December 30, 1982, the executors had the bonds ($1,271,798.57 with interest) together with the necessary forms to effect their redemption delivered to the Federal Reserve Bank in Manhattan to be credited against Federal estate tax due on January 13, 1983. On the same date the trust transferred cash in the amount of $370,926 to the estate to cover the balance of the Federal tax. Prior to this date, and on October 18, 1982, the trustees had made a cash distribution of $490,000 to the estate for use as a payment on account of New York estate taxes. Consequently, respondents argue the commissions sought by the executors should be disallowed on the value of these assets or reduced by $85,308.98.
Here again respondents ignore the fact that the executors upon decedent’s death assumed control of the trust assets to obtain the maximum tax advantages for the various taxpayer entities. Respondents also state the executors only had possession of certain assets for a short period and simply performed ministerial bookkeeping transactions when paying estate taxes. These statements are an over simplification of the functions performed by the executors who in fact assumed responsibility for the trust assets, as mentioned earlier, from the date of their appointment and not merely the 223 days or *1074 shorter interval respondents allege. The cash employed to pay estate taxes, for instance, was obtained by the executors from the sale of securities held in the trust. While the flower bonds were kept in a custodial account they were, like other assets in the trust, subject to the control of the executors and in legal effect in their possession. The executors actually redeemed the bonds on December 30, 1982, and had their proceeds applied in part payment of Federal estate tax that was due on January 1, 1983. Had the entire assets of the trusts been physically turned over to the executors the day after decedent’s death, respondents would have no cause to complain. The circumstance that the executors deferred the distributions to obtain tax advantages, thereby reducing the time they had actual physical custody of various assets, cannot give rise to a bona fide complaint. The arguments advanced against payment of the full commissions ignore the basic fact that had the testatrix intended the funds to pay taxes or bequests to pass directly to the taxing authority or beneficiaries, she would have so provided. Instead, she directed the funds to be paid to her executors and empowered them to make distribution of the property in accordance with the terms of her will (Bank of N. Y. & Trust Co. v Hamersley, supra).
Admittedly, the time and work involved in the redemption of the flower bonds was minor comparatively speaking. However, the drawing and delivery of a check for the same purpose is not significantly different. The answer is that commissions are paid for the collection, administration and distribution of estate assets and the bookkeeping transactions associated with those services may not justifiably be isolated from the over-all picture and separately evaluated out of context with the matters from which they derive. The objectant’s complaint is with the Legislature not the court. Any change in the manner of calculating commissions envisioned by the objectants must be addressed by the Legislature. The courts cannot change the commission statute. Dismissal of objection No. 2 must, therefore, be granted as a matter of law.
The motion is granted.