*57 OPINION OF THE COURT
C. Raymond Radigan, J.
In this accounting proceeding there have been objections filed by 8 of the 13 beneficiaries. After much discussion and conferencing with representatives of the court’s legal staff, the parties agreed to submit the controversy to the court on an agreed statement of facts.
The court is now in receipt of the stipulation of facts, a memorandum of law from the objectants with exhibits, a reply memorandum from petitioner, an affirmation in support of an application to fix attorney’s fees by petitioner’s counsel, a letter from the guardian ad litem with respect to the issues raised in the stipulation of facts and a response to a letter from Alexander Sokoloff, Esq., the primary objectant in this matter.
The parties have agreed that the only issues to be decided are those covered by objections 5, 6, and 7 and the fixing of attorney’s fees.
AGREED FACTS
Selma Piltch died February 14, 1994. At the time of her death Selma was married to Max Piltch.
Max Piltch died approximately six weeks after Selma on March 20, 1994.
Selma Piltch’s last will and testament, dated May 26, 1992 (Selma Piltch’s will), was admitted to probate in Surrogate’s Court, Nassau County, on May 16, 1994, and Alexander Sokoloff (Sokoloff) was appointed as the executor of her estate. Sokoloff was a nephew of Selma Piltch and a nephew by marriage of Max Piltch. The final accounting in Selma Piltch’s estate has been completed and a final amended decree, dated March 7, 1996, was issued by this court with respect to Selma Piltch’s estate.
Max Piltch’s last will and testament, dated September 17, 1992 (Max Piltch’s will), was admitted to probate on June 2, 1994, and Betty Lou Kramer (Kramer) was appointed as the executrix of his estate. Kramer was a niece of Max Piltch and a niece by marriage of Selma Piltch.
Selma Piltch’s will and Max Piltch’s will were, with certain exceptions not relevant here regarding the disposition of certain items of personal property, "mirror” wills. Each provided that the surviving spouse would receive the entire residuary estate of the deceased spouse, and upon the death of the surviving spouse, the same 13 alternate beneficiaries would *58 receive the entire residuary estate of the surviving spouse. Thus, the alternate beneficiaries under both Max Piltch’s and Selma Piltch’s wills (the alternate beneficiaries) were identical. Kramer and Sokoloff were both among the 13 alternate beneficiaries named in the wills.
In early April 1994, shortly after Max Piltch passed away, Sokoloff first discussed the estates of Max and Selma Piltch with Kramer and Sokoloff requested that upon Kramer’s appointment as executrix of the estate of Max Piltch, Kramer consider renouncing the bequest from Selma Piltch to Max Piltch (the bequest) pursuant to EPTL 2-1.11. Sokoloff pointed out to Kramer that, since the alternate beneficiaries under both wills were identical, renunciation would avoid duplicative executor commissions being imposed upon the bequest because the bequest would pass directly from the estate of Selma Piltch to the alternate beneficiaries, rather than passing through the estate of Max Piltch and being subjected to duplicative commissions prior to distribution to the alternate beneficiaries. In addition, Sokoloff informed Kramer that, although neither the Max Piltch nor Selma Piltch estates were subject to Federal estate tax, renunciation would likely result in a net savings of New York estate taxes.
Kramer refused to renounce the bequest on the grounds that she believed she had no duty and/or authority to renounce the bequest and that she was entitled to commissions on the bequest under the terms of Max Piltch’s will. Furthermore, if she had effected a renunciation, the bequest would have been taxed in Selma Piltch’s estate, which was otherwise a nontaxable estate.
Inasmuch as Kramer did not renounce the bequest, Sokoloff thereafter distributed $174,967.78 in cash to the estate of Max Piltch, representing the entire residuary estate together with interest thereon of the estate of Selma Piltch, which amount was shortly thereafter distributed to the alternate beneficiaries.
Kramer included the full amount of the bequest in her computation for executor’s commissions in the instant accounting proceeding. The commissions attributable to the bequest set forth in said accounting were $5,249 out of the total of $19,461.74 in commissions requested by Kramer.
Kramer paid a total of $16,261.40 in New York State estate tax. As set forth in paragraph 5 of the objections, objectants believe that a net savings in New York State estate tax of approximately $1,300 in respect to the estates of Max and Selma
*59 Piltch would have been realized had Kramer renounced the bequest. Petitioner Kramer, however, disputes that any savings would have been realized as a result of a renunciation of the bequest.
Contrary to petitioner’s thinking as set forth in the agreement statement of facts, she did have the authority to renounce the legacy. EPTL 2-1.11 provides the authority and the mechanism for a renunciation. However, there is nothing in the statute or in any case law cited by the objectants that creates any duty on the part of the petitioner to renounce the legacy.
The wills clearly did not prohibit the respective executors from taking commissions on assets received from each estate.
If Mr. Sokoloff had been truly interested in keeping expenses and commissions in the estates to a minimum he could have renounced his appointment as executor of Selma’s estate and Betty Kramer, as the named executrix in the will of the last to die would have been appointed administrator c. t. a. and would have administered both estates creating a situation very analogous to that presented in the case of Matter of Buccola (133 Misc 2d 511) cited by the objectants, where in effect double commissions were disallowed. The present facts here, however, are distinguishable from Buceóla.
The court, having determined that petitioner had no duty to renounce, further finds that the facts, as presented, do not amount to any breach of a fiduciary duty that would give rise to surcharging the petitioner for the alleged excess commissions and lost estate tax savings and denying her attorney’s fees in this proceeding.
Nothing in this case remotely approaches the actions of the coexecutors in the Court of Appeals case of Matter of Donner (82 NY2d 574) cited by the objectants. The quote in Donner (at 585) taken from the decision in Matter of Hahn (93 AD2d 583, 586) while referring to trusts and trustees is equally applicable to executors and estates: " 'To warrant a surcharge, the objectors must show that the trust’s losses resulted from the trustee’s negligence or failure to exercise such prudence’ ”.
There has been no such showing here. Further, without such a showing the court cannot deny the petitioner her commissions (SCPA 2307; see, Matter of Reohr, 71 AD2d 161; Matter of Parkinson, 138 Misc 2d 1069).
The final issue before this court, namely the assessing of counsel fees, is resolved in petitioner’s favor. Applying the principles set forth in Matter of Potts (213 App Div 59, affd 241 *60 NY 593) and Matter of Freeman (34 NY2d 1) the court finds that petitioner and her counsel were required to expend substantial time and effort to compel the executor of Selma’s estate to account and to defend the meritless objections raised by him in connection with the accounting in this estate. The court will permit a fee of $25,100. Counsel has already received payment of $20,000. Therefore, additional payment in the amount of $5,100 may be made by petitioner prior to final distribution.
Petitioner is directed to bring her accounting up to date and file it with the court’s accounting department for final review.