Matter of Spiak (2022 NY Slip Op 05190)

Matter of Spiak

2022 NY Slip Op 05190

Decided on September 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 15, 2022

533468
[*1]In the Matter of the Estate of Stefan Spiak, Also Known as Stefan P. Spiak, Deceased. Maria Bartolini et al., as Coadministrators of the Estate of Stefan Spiak, Also Known as Stefan P. Spiak, Deceased, Appellants- Respondents; Maria Kunze, Respondent- Appellant.

Calendar Date:August 18, 2022

Before:Garry, P.J., Lynch, Aarons, Ceresia and Fisher, JJ.

Bond, Schoeneck & King, PLLC, Albany (Mara D. Afzali of counsel), for appellants-respondents.
Ilasz & Associates, New York City (Glen Wertheimer of counsel), for respondent-appellant.

Garry, P.J.
Cross appeals from an order of the Surrogate's Court of Albany County (Stacy L. Pettit, S.), entered May 13, 2021, which, in a proceeding pursuant to SCPA article 22, among other things, partially granted respondent's cross motion for summary judgment on her objections to petitioners' accounting.
These cross appeals arise out of the administration of the estate of Stefan Spiak (hereinafter decedent), who died intestate as a resident of Albany County in October 2017, survived by respondent — his sister — and petitioners — his nieces and nephew. Respondent, who resides in and is a citizen of Poland, is a one-half beneficiary of the estate, and petitioners, who reside in various states and are citizens of the United States, are each one-sixth beneficiaries. In November 2017, petitioners were granted letters of administration without objection and appointed as coadministrators of the estate.
At the time of his death, decedent owned several assets that petitioners, collectively speaking, marshalled and administered, with the assistance of the estate's counsel. Of note, decedent owned a Fidelity Investments balanced fund (hereinafter the Fidelity IRA); the named beneficiary of this fund was petitioners' mother, who had predeceased decedent. According to petitioners, they were advised by Fidelity representatives that their only options for managing the Fidelity IRA were to either liquidate the entire account and distribute the funds to the estate or transfer the entire account in kind into an inherited IRA in the estate's name. Petitioners proceeded with the latter option, and they subsequently created three additional inherited IRAs in the estate's name, one for each of their benefit. Petitioners ultimately directed Fidelity to transfer a one-sixth share of the estate's inherited IRA, in kind, into each of their inherited IRAs, liquidate the remaining balance of assets held in the account, withhold specified federal taxes (37%) and state taxes (10%) therefrom and then close the account.
In February 2019, petitioners commenced this proceeding to judicially settle their accounting, requesting three statutory commissions along with counsel fees. Respondent filed objections to the accounting, alleging, among other things, that petitioners breached their fiduciary duties and engaged in self-dealing by mishandling the Fidelity IRA. Specifically, respondent alleged that petitioners caused her to incur avoidable tax liability by failing to contact her to obtain a United States individual taxpayer identification number (hereinafter US ITIN) and procure the same type of inherited IRA for her as they did for themselves or, alternatively, by permitting her to take periodic distributions from the estate. Respondent also alleged that petitioners needlessly transferred the Fidelity IRA into an inherited IRA in the estate's name, thereby inflating the value of the estate by the amount of their collective half-share and artificially increasing their statutory commissions[*2]. She also challenged petitioners' entitlement to any commissions, asserting that, even without the foregoing breach, there is no evidence that they performed any work administering the estate.
Meanwhile, the federal and state taxes that petitioners directed Fidelity to withhold were returned as erroneously paid;[FN1] instead, a sum of money was withheld on respondent's behalf pursuant to the Foreign Account Tax Compliance Act (hereinafter FATCA), which imposes a tax at a flat rate of 30% on the amount received from sources within the United States by a nonresident foreign citizen (see generally 26 USC §§ 871 [a]; 1441 [a]). Respondent's alleged net distribution from the Fidelity IRA was paid to her following her request for a partial distribution from the estate.[FN2] Petitioners accordingly amended their final accounting to reflect these developments.
In November 2020, following some discovery, petitioners moved for summary judgment dismissing respondent's objections and settling the account. In relevant part, petitioners asserted that they had been advised by an unspecified Fidelity representative that only those with a US ITIN could create an inherited IRA, and they apparently knew that respondent did not have said number at the time that they created their own accounts. Respondent opposed the motion and cross-moved for summary judgment, providing proof that petitioners had been directly advised that respondent was eligible for an inherited IRA and arguing that, at minimum, petitioners should have communicated to her that she could contact Fidelity to inquire about same. She also sought to compel certain discovery, impose sanctions, limit petitioners to no more than one statutory commission and audit the legal fees sought by petitioners.
Surrogate's Court denied petitioners' motion in its entirety and partially granted respondent's cross motion, finding, as a matter of law, that petitioners breached their fiduciary duties and engaged in self-dealing by not affording respondent the opportunity to enjoy a benefit that petitioners secured for themselves, although questions of fact remained as to the precise measure of damages. With respect to the commissions sought by petitioners, the court concluded that issues of fact exist in light of the breaches established by respondent and the limited evidence of services performed by certain petitioners, but any commissions would not be computed on the value of assets transferred into petitioners' inherited IRAs as that property allegedly passed directly to petitioners as beneficiaries and bypassed the estate. These cross appeals ensued.
Initially, it is not disputed that petitioners met their prima facie burden with respect to the branch of their motion that sought summary judgment settling their accounting by submitting a verified accounting petition, a facially complete accounting and affidavits of the accounting parties (see Matter of Crane, 100 AD3d 626, 628 [2d Dept 2012], lv dismissed 21 NY3d 1000[*3][2013], lv denied 29 NY3d 906 [2017]; Matter of McAlpine, 85 AD3d 1185, 1185-1186 [2d Dept 2011]; Matter of Korn, 36 Misc 3d 1224[A], 2012 NY Slip Op 51468[U], *7 [Sur Ct, NY County 2012]). We therefore turn to the branch of their motion that sought summary judgment dismissing respondent's objections, the first of which involves their alleged mishandling of the Fidelity IRA.
Petitioners, as coadministrators of the estate, "were fiduciaries who owed a duty of undivided loyalty to the decedent and had a duty to preserve the assets . . . entrusted to them" (Matter of Donner, 82 NY2d 574, 584 [1993]; see Matter of Wallens, 9 NY3d 117, 122 [2007]). They were therefore "required to employ such diligence and prudence to the care and management of the estate assets and affairs as would prudent persons of discretion and intelligence in their own like affairs" (Matter of Shambo, 169 AD3d 1201, 1205 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Braasch, 140 AD3d 1341, 1342 [3d Dept 2016]), "accented by 'not honesty alone, but the punctilio of an honor the most sensitive'" (Matter of Rothko, 43 NY2d 305, 320 [1977] [brackets omitted], quoting Meinhard v Salmon, 249 NY 458, 464 [1928]; see Matter of Carbone, 101 AD3d 866, 868 [2d Dept 2012]). They were also duty-bound to remain impartial and treat all beneficiaries "in like manner and without prejudice or discrimination" (Matter of Muller, 24 NY2d 336, 341 [1969]; see Matter of Grawe, 32 AD3d 1309, 1309 [4th Dept 2006]; Banker v Banker, 23 Misc 3d 1111[A], 2009 NY Slip Op 50701[U], *7 [Sup Ct, Delaware County 2009]) and avoid both "blatant self-dealing" and "situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty" (Birnbaum v Birnbaum, 73 NY2d 461, 466 [1989]; see Matter of Lawrence, 24 NY3d 320, 344 [2014]).
We agree with Surrogate's Court that petitioners' arguments on their motion fail to address the root of respondent's objection and eliminate the existence of triable issues of fact with respect thereto — that petitioners failed to communicate with her about the availability of a benefit that they, aided by counsel for the estate, secured for themselves. We therefore cannot conclude that petitioners are entitled to judgment as a matter of law with respect to respondent's breach of fiduciary duty objection.
The next question is whether respondent is entitled to summary judgment on her objection. As to the breach, respondent submitted recorded telephone calls between Fidelity and the law firm representing the estate. Those calls reveal that a paralegal with the firm repeatedly sought "to confirm" that respondent, as a nonresident foreign citizen, could not open an inherited IRA, while conveying that petitioners would like to take their distributions into same. The paralegal was clearly advised that all four estate beneficiaries could establish inherited IRAs, "the foreign citizen just takes a few extra steps[*4]." The paralegal went on to request that packages of hard-copy forms be sent to the firm for petitioners, who purportedly have difficulty with electronic formats, so that they could open inherited IRAs. He then inquired as to the process to liquidate respondent's half-share in case petitioners were "unable to work with the Polish citizen, who does not speak English." Inherited IRAs for the benefit of petitioners were later established, and, in their capacity as administrators, petitioners directed the distribution of their respective shares into said accounts and the liquidation of respondent's share.
To the extent that Surrogate's Court concluded that the foregoing was evidence of self-dealing, we cannot agree, as there is no indication that petitioners obtained any direct or indirect personal advantage, benefit or profit from the challenged conduct. However, respondent's proof was adequate to demonstrate, prima facie, that petitioners breached their respective fiduciary duties by failing to treat her in the same manner as they treated all other beneficiaries — i.e., themselves. Petitioners' opposition to respondent's cross motion largely left the foregoing unchallenged,[FN3] and the court's grant of partial summary judgment was therefore appropriate.
To prove her objection, respondent was also required to show "damages directly caused by the misconduct" (Matter of Testani v Russell & Russell, LLC, 204 AD3d 1260, 1262 [3d Dept 2022]; see Massey-Hughes v Massey, 200 AD3d 1684, 1687 [4th Dept 2021]). Respondent sought to meet her burden in that respect with the affidavit of the certified public accountant (hereinafter the CPA) she retained to prepare her United States tax returns, whom Surrogate's Court declined to qualify as an expert. In his affidavit, the CPA opines that petitioners might have saved respondent stated sums if they had allowed her to either open an inherited IRA or take her distribution from the estate over a period of time.[FN4]
In light of the determination of Surrogate's Court to not qualify the CPA as an expert in matters relating to this case, we agree with petitioners that the CPA's affidavit was largely inadmissible, and his damages calculations should not have been considered (see Silverman v Doell, 138 AD3d 1339, 1341 [3d Dept 2016], lv dismissed 28 NY3d 1083 [2016]; Flanger v 2461 Elm Realty Corp., 123 AD3d 1196, 1197-1198 [3d Dept 2014]; Rosen v Tanning Loft, 16 AD3d 480, 481 [2d Dept 2005]). Moreover, although the CPA's conclusions are accompanied by data tables, which respondent defends as "self-explanatory," there is simply no explanation of the CPA's methodology — most notably, the basis for the varying tax rates employed.[FN5] Thus, there is nothing from which the validity of the information imparted in the CPA's affidavit or his ultimate conclusions as to damages may be inferred, and, contrary to respondent's claim, the affidavit therefore lacks the probative force adequate to support an award of summary judgment (see Birjukow [*5]v Niagara Coating Servs., Inc., 165 AD3d 1586, 1587 [4th Dept 2018]; Austin v CDGA Natl. Bank Trust & Canandaigua Natl. Corp., 114 AD3d 1298, 1300 [4th Dept 2014]; Costanzo v County of Chautauqua, 108 AD3d 1133, 1133-1134 [4th Dept 2013]), regardless of the sufficiency of the opposing papers in that respect (see Flushing Sav. Bank, FSB v Bitar, 25 NY3d 307, 313 [2015]).
Turning to respondent's objection concerning the commissions requested by petitioners, we first agree with petitioners that, as the Fidelity IRA had no valid beneficiary, the asset came into petitioners' hands in a form that required affirmative administration in some manner (see Matter of Parkinson, 138 Misc 2d 1069, 1071 [Sur Ct, Nassau County 1988]; Matter of Steinberg, 208 Misc 135, 136-137, 143 [Sur Ct, Kings County 1955]; Matter of Curtiss, 15 Misc 545, 551-552 [Sur Ct, Westchester County 1896], affd 9 App Div 285 [2d Dept 1896]; cf. Matter of Katz, 55 AD3d 836, 836-837 [2d Dept 2008]; Matter of Zahoudanis, 205 AD2d 547, 547 [2d Dept 1994]; compare Matter of Hurst, 111 App Div 460, 462-463 [2d Dept 1906]). Any commissions may therefore properly include the value of petitioners' collective half-share of the Fidelity IRA, which was "receiv[ed] and pa[id] out" during petitioners' service (SCPA 2307 [1]; see generally Matter of Saphir, 73 Misc 2d 907, 909-913 [Sur Ct, Kings County 1973]). Next, to the extent that respondent maintains that only one commission, if any, would be warranted here, given that the gross value of the estate amounts to $300,000 or greater, petitioners are each, in theory, entitled to a full statutory commission (see SCPA 2307 [5]); neither Surrogate's Court nor petitioners were under an obligation to directly inform respondent of this possibility.
That said, Surrogate's Court correctly held that issues of fact remain as to petitioners' otherwise mandatory statutory commissions in light of, among other things, respondent's viable breach of fiduciary duty objection (see generally Matter of Billmyer, 142 AD3d 1000, 1002 [2d Dept 2016]; Matter of Carbone, 101 AD3d at 869; Matter of Cramer, 24 AD3d 864, 866 [3d Dept 2005]; Matter of Farone, 162 AD2d 828, 829 [3d Dept 1990]; Matter of Campbell, 138 AD2d 827, 829-830 [3d Dept 1988]; Matter of Rozycki, 144 Misc 2d 741, 742-743 [Sur Ct, Bronx County 1989]). Additionally, because "[t]he payment of commissions is not a gratuity but compensation for services rendered in collecting and administering the assets of the estate and in distributing its net proceeds" (Matter of Parkinson, 138 Misc 2d at 1071; see SCPA 2307 [1]), the court may also exercise its discretion over the requested commissions if it is established that one or more of petitioners carried out no such services (see generally Matter of Johnson, 166 AD3d 1432, 1433 [3d Dept 2018]; Matter of Schaich, 55 AD2d 914, 915 [2d Dept 1977], lv denied 42 NY2d 802 [1977]).
Finally, we turn to sanctions and fees. Although it is clear from the record that petitioners [*6]have, among other things, repeatedly failed to fully and timely comply with discovery demands, we cannot say that Surrogate's Court abused its discretion by denying respondent's request for sanctions while reserving the right to impose same at a later date (see generally CPLR 3126; Estate of Savage v Kredentser, 167 AD3d 1344, 1345 [3d Dept 2018]; Green Tree Servicing LLC v Bormann, 157 AD3d 1112, 1113-1114 [3d Dept 2018]). The same may be said for the counsel fees requested by respondent (see generally Estate of Savage v Kredentser, 167 AD3d at 1345; Matter of John H., 60 AD3d 1168, 1169 [3d Dept 2009]). Given that this litigation is ongoing, the court was also within its discretion to presently deny respondent's request to audit the fees requested by petitioners' counsel while directing that petitioners submit to the court unredacted, itemized attorney billing statements for subsequent review.
To the extent not expressly addressed herein, the parties' remaining contentions have been examined and found to lack merit.
Lynch, Aarons, Ceresia and Fisher, JJ., concur.
ORDERED that the order is modified, without costs, by reversing so much thereof as held that petitioners' commissions could not include the value of their shares of decedent's Fidelity Investments balanced fund; and, as so modified, affirmed.

Footnotes

Footnote 1: The Internal Revenue Service recognized the federal tax as overpayment and refunded it, and petitioners then sought and obtained a refund for the state tax, which they had erroneously directed be paid to the Commonwealth of Massachusetts.
Footnote 2: Respondent had requested, and later petitioned for, a partial distribution in a lesser amount representing her undisputed share of the cash residue of the estate, citing to her age, medical expenses and impoverished status. After opposing her requests and then failing to timely comply with a Surrogate's Court order granting same, petitioners ultimately elected to distribute to respondent her alleged net share of the Fidelity IRA.

Footnote 3: Petitioners now argue that, at the time that they liquidated respondent's share of the Fidelity IRA, they believed and understood that respondent wished to take her entire share of the estate in cash. There is no support for this assertion in the record (see Parker v Rogerson, 33 AD2d 284, 289 [4th Dept 1970], appeal dismissed 26 NY2d 964 [1970]).
Footnote 4: The CPA also asserted that, pursuant to the 2019 federal tax return he prepared for respondent, her tax liability was less than the amount withheld by petitioners on her behalf. Any refund due to her, however, would be from the Internal Revenue Service, not the estate.
Footnote 5: The tax rates employed by the CPA appear to range from around 12% to around 21%. As noted above, and acknowledged by the CPA in his affidavit, FATCA governs the tax on amounts received by a nonresident foreign citizen from sources within the United States that are not connected with a United States business (see 26 USC § 871 [a]). This tax, and the required withholding, is at a flat rate of 30% (see 26 USC §§ 871 [a]; 1441 [a]), and the Internal Revenue Code does not permit deductions from income subject to taxation under 26 USC § 871 (a) (1) (see 26 USC § 873 [a]; Treas Reg 1.871-7 [a] [3]). If respondent benefits from an income tax treaty between the United States and Poland (see generally 26 USC § 894; 26 CFR 1.1441-6), that too has gone unexplained.