Matter of Dibble (2025 NY Slip Op 06109)

Matter of Dibble

2025 NY Slip Op 06109

Decided on November 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 6, 2025

CV-24-1006
[*1]In the Matter of the Estate of Franklin D. Dibble, Deceased. Courtney R. Howell et al., as Co-Executors of the Estate of Franklin D. Dibble, Deceased, Appellants-Respondents; Gregory F. Dibble, Respondent-Appellant.

Calendar Date:September 2, 2025

Before:Garry, P.J., Pritzker, McShan, Powers and Mackey, JJ.

Aimee R. Churchill, Watkins Glen, for appellants-respondents.
Gregory L. Silverman, Esq., PLLC, Geneva (Gregory L. Silverman of counsel), for respondent-appellant.

McShan, J.
Cross-appeals from an order of the Surrogate's Court of Schuyler County (Scott Miller, S.), entered May 10, 2024 which, in a proceeding pursuant to SCPA article 14, partially granted petitioners' motion for, among other things, summary judgment dismissing the objections to decedent's last will and testament.
In February 2017, Franklin D. Dibble (hereinafter decedent) executed a will devising the entirety of his estate to his wife or, in the event that decedent's wife predeceased him, to respondent, his son. Decedent's wife died in June 2017 and, shortly thereafter, decedent executed a new will devising the entirety of his estate to petitioners Courtney R. Howell and Nathan A. DeStephen, who are decedent's grandchildren and respondent's niece and nephew. Decedent died in April 2021 and petitioners subsequently petitioned for probate of decedent's will. In November 2021, respondent filed verified objections to probate and requested that the proceeding be dismissed on the grounds of, among other things, fraud and undue influence by petitioners. Petitioners thereafter moved to dismiss the objections for failure to state a claim, which motion Surrogate's Court (Hayden, S.) denied.
Petitioners answered respondent's objections and subsequently moved for summary judgment dismissing the objections and for the sanction of dismissal for alleged discovery violations. Surrogate's Court (Miller, S.) partially granted petitioners' motion, dismissing respondent's objection of fraud but determining that respondent had raised a material issue of fact regarding whether petitioners exercised undue influence over decedent and whether a confidential relationship existed between petitioners and decedent. The court further denied the portion of petitioners' motion seeking to dismiss respondent's objections for alleged discovery violations. These cross-appeals ensued.
We affirm. "Summary judgment, although rare in a contested probate proceeding, is appropriate where a petitioner establishes a prima facie case for probate and the objectant fails to raise any genuine issues of fact regarding testamentary capacity, execution of the will, undue influence or fraud" (Matter of Ostrander, 237 AD3d 1444, 1445 [3d Dept 2025] [citations omitted]). Turning first to respondent's claim of undue influence, the elements of such a challenge are "motive, opportunity, and the actual exercise of that undue influence" over the testator (Matter of Timer, 221 AD3d 1103, 1106 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Stafford, 111 AD3d 1216, 1217 [3d Dept 2013], lv denied 23 NY3d 904 [2014]). In advancing a claim of undue influence, "the burden is on the objectant to show that the influencing party's actions are so pervasive that the will is actually that of the influencer, not that of the decedent" (Matter of Linich, 213 AD3d 1, 5 [3d Dept 2023] [internal quotation marks and citations omitted]). However, "[w]here there is a confidential relationship between [*2]parties to a transaction, the burden shifts to the stronger party in such a relationship to prove by clear and convincing evidence that a transaction from which he or she benefitted was not occasioned by undue influence" (Matter of Mary, 202 AD3d 1418, 1420 [3d Dept 2022] [internal quotation marks, ellipsis and citations omitted]; see Dwyer v Valachovic, 137 AD3d 1369, 1371 [3d Dept 2016]). "A confidential relationship exists between two parties where they deal on unequal terms due to one party's weakness, dependence or trust justifiably reposed upon the other and unfair advantage is rendered probable" (Matter of Giaquinto, 164 AD3d 1527, 1531 [3d Dept 2018] [internal quotation marks, ellipsis, brackets and citations omitted], affd 32 NY3d 1180 [2019]). "The existence of a confidential relationship will ordinarily be a question of fact" (Matter of Rozof, 219 AD3d 1428, 1430 [2d Dept 2023] [internal quotation marks and citations omitted]; accord Fischer v Reed, 224 AD3d 886, 887 [2d Dept 2024]).
Petitioners met their initial burden on the motion through their submission of decedent's will and the executing affidavits from the drafting attorney and another witness, as well as the accompanying affidavit from the drafting attorney explaining her observations of decedent, which established the presumption of regularity arising from proper execution (see Matter of Ostrander, 237 AD3d at 1445-1446; Matter of Dralle, 192 AD3d 1239, 1240 [3d Dept 2021]; Matter of Cameron, 126 AD3d 1167, 1168 [3d Dept 2015]). Thus, the burden shifted to respondent to demonstrate a triable issue of fact. We find that respondent has done so specifically with respect to his allegation that decedent had a confidential relationship with petitioners.
Respondent points to evidence of decedent's failing health prior to execution of the June 2017 will. Decedent's health records reveal that he had suffered from dementia since around 2014 and that the severity of his symptoms had steadily increased since the onset of the disease. In conjunction with that condition, the record reflects that decedent's wife had largely managed the couple's finances and other life activities up until the time of her death. Notes from a visit by Protective Services for Adults (hereinafter PSA) that occurred on June 21, 2017 — after the wife's death and prior to execution of the most recent will — indicate that petitioners had taken over those responsibilities after the wife passed. DeStephen's deposition testimony reflects that he had resided with decedent since DeStephen was 15 years old, and provided varying levels of support to decedent throughout his life. Similarly, Howell testified at her deposition that she provided both decedent and his wife with "mutual emotional support" and that she assisted them with various "life activities." The record also established that, after decedent had brought up changing his will during the June 21 meeting with PSA, Howell was involved in requesting and scheduling [*3]the appointment with the attorney for that purpose. The challenged will, signed 10 days after decedent's spouse had passed, meaningfully differed from the content of the will that was executed four months earlier, which had left the entirety of decedent's estate, in the event that his wife predeceased him, to respondent.[FN1]
Respondent further introduced records from a PSA investigation initiated in March 2018 based upon concerns that petitioners were potentially abusing the power of attorney that decedent executed in favor of petitioners on the same day that he executed the challenged will. Those records demonstrate numerous large transactions from decedent's various bank accounts occurring after the final will was executed, some of which were attributable to DeStephen and Howell. During their respective depositions, both DeStephen and Howell acknowledged various checks that they had signed but could not recall the purpose of several expenditures. The PSA records also reveal some apparent confusion on the part of decedent with respect to certain transactions that petitioners made utilizing the power of attorney. Although those events occurred after the June 2017 will was executed, they lend support, when considered alongside the above-referenced factual circumstances that existed prior to the will execution, to the inference that a confidential relationship existed between petitioners and decedent (see generally Matter of Mary, 202 AD3d at 1421-1422). Accordingly, despite petitioners' "close family ties[, which] may negate the presumption of undue influence that would otherwise arise from a confidential or fiduciary relationship," the facts in the record, viewed in the light most favorable to respondent, permit a factfinder to reasonably infer that petitioners "acted not out of family duty, but rather cupidity" (Matter of Antoinette, 238 AD2d 762, 764 [3d Dept 1997]; accord Matter of Mary, 202 AD3d at 1420). To that, "[n]o single circumstance is dispositive" as the factfinder may look to "the confluence of many factors" (Matter of Antoinette, 238 AD2d at 763; compare Matter of Prevratil, 121 AD3d 137, 143 [3d Dept 2014]). The record before us suggests that resolution of the existence of a confidential relationship between petitioners and decedent is best left to the factfinder (see Matter of Rozof, 219 AD3d at 1430; Matter of Nealon, 104 AD3d 1088, 1089 [3d Dept 2013], affd 22 NY3d 1045 [2014]; compare Matter of Ostrander, 237 AD3d at 1447-1448; Matter of Ruhle, 173 AD3d 1389, 1391 [3d Dept 2019]). Accordingly, petitioners' motion was properly denied on that basis.
We also agree with Surrogate's Court's determination that respondent failed to demonstrate a triable issue of fact with respect to his claim of fraud. "To establish fraud, it must be shown that the proponent knowingly made a false statement that caused the decedent to execute a will that disposed of his or her property in a manner different from the disposition he or she would have made [*4]in the absence of that statement" (Matter of Urban, 222 AD3d 1088, 1090 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Christie, 170 AD3d 718, 720-721 [2d Dept 2019]). An objectant to a will, on the grounds of fraud, must "specify the times, dates and places where fraud occurred, [and] conclusory and speculative allegations are insufficient to create any viable factual issues as to fraud" (Matter of Linich, 213 AD3d at 6). Respondent testified that during a conversation between the three of them that occurred after decedent's wife's funeral, petitioners accused him of attempting to financially exploit decedent. However, respondent acknowledged that he could only assume that petitioners repeated the statement to decedent. That allegation of fraud is "conclusory and speculative," rendering it "insufficient to create any viable factual issues as to fraud" (id.). Respondent's reliance on an entry in decedent's medical records that suggests Howell made a similar statement to decedent's treating physician suffers from the same flaw, as there is no indication that it was spoken in decedent's presence (see Matter of Robbins, 206 AD3d 739, 741 [2d Dept 2022]; Matter of Martinico, 177 AD3d 882, 885-886 [2d Dept 2019]; Matter of Mele, 113 AD3d 858, 860-861 [2d Dept 2014]; Matter of Paigo, 53 AD3d 836, 838 [3d Dept 2008]). More importantly, the statement was purportedly made after the contested will was executed and could not have influenced decedent to change his will (see Matter of Bianco, 195 AD2d 457, 458 [2d Dept 1993]).
Finally, with respect to petitioners' motion for sanctions, although they have put forth evidence suggesting that respondent has failed to "fully and timely comply with [certain] discovery demands, we cannot say that Surrogate's Court abused its discretion by denying [petitioners'] request for" the sanction of dismissal (Matter of Spiak, 208 AD3d 1482, 1488 [3d Dept 2022]; see Castillo v Charles, 210 AD3d 625, 627 [2d Dept 2022]). The litigation in this case remains ongoing and, to that end, Surrogate's Court may yet interpose an appropriate sanction should respondent continue his purported failure to adequately respond to discovery requests and subpoenas (see generally Matter of Scaccia, 66 AD3d 1247, 1250 [3d Dept 2009]). Accordingly, we will not disturb Surrogate's Court's decision to forgo discovery sanctions at this juncture.
Garry, P.J., Pritzker, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The February 2017 will expressly disinherited petitioners' parents.